**SILVERMANACAMPORA LLP**
Attorneys for First Manhattan Developments REIT
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Kenneth P. Silverman
Adam L. Rosen

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| 785 PARTNERS LLC, | Case No. 11-13702 (SMB) |
| Debtor. | |

-------------------------------------------------------------x

### MOTION OF FIRST MANHATTAN DEVELOPMENTS REIT FOR ORDER PURSUANT TO 11 U.S.C. §543(d)(2), EXCUSING RECEIVER FROM REQUIREMENTS IMPOSED BY 11 U.S.C. §§543(a) AND (b)(1)

First Manhattan Developments REIT ("First Manhattan"), a secured creditor of 785 Partners LLC (the "Debtor") the above-captioned debtor and debtor in possession, holding a claim of approximately $100 million, which claim is secured by the building and property known as 306 West 48th Street, or 785 Eighth Avenue, New York, New York ("Premises"), respectfully submits this motion (the "Motion") for an order (i) pursuant to section 543(d)(2) of title 11, United States Code (the "Bankruptcy Code") excusing Gerald Kahn, as receiver (the "Receiver"), appointed on October 6, 2010 by order (the "Appointment Order") of the Supreme Court of the State of New York, New York County (the "State Court") in the action styled "PB Capital Corporation, as Administrative Agent for Lenders, PB Capital Corporation and TD Bank, N.A. v. 785 Partners LLC, Kevin O'Sullivan, Donal O'Sullivan, *et al.*" (Index No. 810039/2010) (the "Foreclosure Action") from complying with the requirements imposed under Bankruptcy Code §§543(a) and (b)(1), and (ii) granting further relief as this Court may deem proper, and represents as follows:

**PRELIMINARY STATEMENT**

1. This is a single asset real estate case which was filed to stay a foreclosure action which has been pending for over 10 months.[1] It is essentially a two-party dispute. It is undisputed that the units in the Premises are not occupied by any tenants, and that the Debtor has no income with which to pay the expenses necessary to maintain and preserve the Premises.[2]

2. By this Motion, First Manhattan seeks entry of an order excusing the Receiver from complying with the requirements of Bankruptcy Code §§543(a) and (b)(1), which require the Receiver, among other things, to cease his maintenance of the Premises and turnover all property, including funds on hand, to the Debtor. First Manhattan seeks relief permitting the Receiver, who has been in place since October 6, 2010, to remain in place pursuant to the Appointment Order, under which it is the Receiver's responsibility to control, secure and protect the Premises, which includes maintaining an operable safety system, insurance coverage and keeping out squatters or vandals seeking to enter and damage the Premises.

3. The Debtor does not have the funds necessary to maintain and secure the Premises. For the past ten months, funds necessary to pay for necessary expenditures including security, heat, electricity, and insurance, have been supplied to the Receiver from First Manhattan's predecessor. Accordingly, First Manhattan seeks assurance that it should continue to advance funds to the Receiver, so that he can continue fulfilling his responsibilities under the Appointment Order, and preserve and protect the Premises.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. § 157(b).

---

[1] Indeed, the Debtor's petition was filed on the date of and immediately preceding the oral argument on First Manhattan's predecessor's motion for summary judgment in a foreclosure action.

[2] First Manhattan intends to file a motion seeking, among other relief, an order dismissing the case or, in the alternative, modifying the automatic stay of Bankruptcy Code section 362 and reserves all of its rights.

5. The statutory predicate for the relief sought herein is Bankruptcy Code §543(d)(2).

**BACKGROUND**

6. On August 3, 2011 (the "Petition Date"), the Debtor filed a voluntary chapter 11 petition in this Court.

**The Foreclosure Action**

7. The Foreclosure Action arose in connection with three mortgages (the "Mortgages") which secure promissory notes (the "Notes") in the aggregate principal amount of up to approximately $84 million, which Notes and Mortgages are in default and have fully matured. The loans evidenced by the Notes and Mortgages were originally made to the Debtor by PB Capital Corporation, as Administrative Agent for lenders PB Capital Corporation and TD Bank, N.A. (the "Initial Lenders"). The Debtor, contemporaneously with the execution of the Mortgages, also executed and delivered the Notes and related agreements.

8. In or about July 2009, the Notes became due and the Debtor failed to pay the outstanding principal balance and accrued interest. On July 23, 2009, the Debtor and the Initial Lenders entered into a letter agreement which provided for, among other provisions, a revised Maturity Date for the Notes of August 7, 2009. When the Notes became due and payable on August 7, 2009, the Debtor again failed to pay the outstanding principal balance and accrued interest.

9. On September 27, 2010, the Foreclosure Action was commenced against several parties including the Debtor, as well as Kevin O'Sullivan and Donal O'Sullivan, as guarantors of the Debtor's obligations under the Notes and the Mortgages.

10. On July 29, 2011, First Manhattan acquired the Initial Lenders' interest in the Mortgages and Notes, and related agreements including certain guarantees.

**The Appointment Order**

11.     On or about September 30, 2010, the Initial Lenders sought the emergency appointment by the State Court of a receiver to take control of and secure the Premises during the pendency of the Foreclosure Action. On October 6, 2010, the State Court entered the Appointment Order which authorized the Receiver to:

> exercise the following limited powers, duties and directions: (1) to take control of, secure and protect the mortgaged premises, (2) to provide electricity and heat so that pipes will not burst and buildings safety systems are operable, [and] (3) to keep in place insurance coverage.

(A copy of the Appointment Order is annexed as Exhibit "A" to the Declaration of Thomas P. Battistoni filed in support of the Motion.)

12.     The Appointment Order further provides that the Initial Lenders would advance the funds necessary to pay the above-described costs of maintaining the Premises, including insurance coverage.

13.     Since his appointment, the Receiver has obtained an appropriate bond, and also retained a property manager for the Premises pursuant to an additional order by the State Court entered on November 18, 2010. (A copy of the Order authorizing the Receiver to retain a property manager is annexed as Exhibit "B" to the Declaration of Thomas P. Battistoni filed n support of the Motion.)  In addition, since January 1, 2011, the Receiver has paid approximate $357,000 in expenses related to the Premises. Those expenses were funded by the Initial Lenders.

**RELIEF REQUESTED**

14.     By this Motion, pursuant to Bankruptcy Code §543(d)(2), First Manhattan requests that the Court excuse the Receiver from complying with the requirements imposed under Bankruptcy Code §§543(a) and (b)(1), and permit the Receiver to continue maintaining and preserving the Premises pursuant to the authority granted to him under the Appointment Order.  Bankruptcy Code §543(a) provides, in pertinent part:

> A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the admission of, property of the debtor, . . . in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property."

11 U.S.C. §543(a).

15. Bankruptcy Code §543(b) provides, in pertinent part:

> A custodian shall – (1) deliver to the trustee any property of the debtor held by or transferred to such custodian . . . on the date that such custodian acquires knowledge of the commencement of the case; and (2) file an accounting of any property of the debtor . . . that, at any time, came into the possession, custody, or control of such custodian.

11 U.S.C. §§543(b)(1) – (2).

16. A custodian's appointment does not, however, automatically terminate upon the filing of a bankruptcy petition. *See French Bourekas, Inc. v. Turner* 199 B.R. 807, 815 (E.D.N.Y. 1996). Bankruptcy Code §543(d)(1) permits the court, after notice and a hearing, to excuse a custodian's compliance with §§543(a), (b) or (c), "'if the interests of creditors . . . would be better served by' the custodian's continued administration of the debtor's property." 5 COLLIER ON BANKRUPTCY ¶ 543.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). *See also In re U.S. Adver. Inc.* 131 B.R. 537, 540 (Bankr. D.R.I. 1991) (holding bankruptcy court will excuse custodian's requirement to turnover property and accounting if the "interests of creditors would be 'better served' by permitting the custodian to maintain possession").

17. Bankruptcy Code §543(d)(2) provides an alternative means by which a custodian may continue in his or her role. Specifically, Bankruptcy Code §543(d)(2) states that, after notice and a hearing, the bankruptcy court shall excuse compliance with §§543(a) and (b)(1), if

> the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

11 U.S.C. §543(d)(2).

18. When creditors seek to have the custodian excused from the requirements of Bankruptcy Code §543(b)(1), factors considered by courts include: "(1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the property for the benefit of its creditors; and (3) whether there has been mismanagement by the debtor." 5 COLLIER ON BANKRUPTCY ¶ 543.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing *In re Orchards Village Invs., LLC*, 405 B.R. 341, 353—54 (Bankr. D. Or. 2009)).

19. Before a court can decide that a custodian need not comply with Bankruptcy Code §§543(a) and (b)(1), however, it must first be established that the individual in question is in fact a "custodian" under the Bankruptcy Code.

20. Bankruptcy Code §101(11)(A) and (C) defines "custodian" to include "receiver or trustee of any property of the debtor, appointed in a case or proceeding not under this title," or "trustee, receiver, or agent under applicable law . . . that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors." 11 U.S.C. §101(11). *See also* 5 COLLIER ON BANKRUPTCY ¶ 543.01[1, n.10] (Alan N. Resnick & Henry J. Somme rds., 16th ed.) ("The categories of custodians [in the definition] are descriptive rather than exhaustive.'" (quoting *In re Cash Currency Exch., Inc.*, 762 F.2d 542,553 (7th Cir.), cert. denied, 474 U.S. 904 (1985)).

21. In this case, the Receiver is a "custodian" under Bankruptcy Code §101(11), because the definition includes a "receiver" appointed to take charge of property of the debtor. The authority granted to the Receiver in the Appointment Order clearly demonstrates that the Receiver satisfies the definition of "custodian" under Bankruptcy Code §101(11), and therefore also satisfies the requirement of Bankruptcy Code §543.

22. The Receiver should be excused from compliance with Bankruptcy Code §§543(a) and (b)(1) by virtue of the date of his appointment under Bankruptcy Code §543(d)(2).

23. Bankruptcy Code §543(d)(2) requires that in order for the custodian in place to avoid compliance with Bankruptcy Code §§543(a) and (b)(1), he or she must have been appointed or have taken possession of the property more than 120 days before the date of the filing of the petition. 11 U.S.C. §543(d)(2). In order for the Receiver here to be excused from compliance with Bankruptcy Code §§543(a) and (b)(1), therefore, the Receiver would need to have been appointed no later than April 5, 2011.

24. The Petition Date of August 3, 2011, is 301 days after the Appointment Order was entered on October 6, 2010. Accordingly, the Receiver clearly satisfies the 120 day requirement under Bankruptcy Code §543(d)(2), and should be excused from compliance with Bankruptcy Code §543(a) and (b)(1).

25. Here, the facts supporting an order excusing the Receiver from the requirements of Bankruptcy Code §543(b)(1) are compelling. First, the Premises is completely vacant and the Debtor has no income and no funds to preserve the Premises. Second, the Receiver has properly performed his duties and has protected and maintained the Property in accordance with the Appointment Order. Moreover, the Initial Lenders, the parties with the primary economic interest in the Property, which has since been assigned to First Manhattan, successfully sought the appointment of the Receiver in the State Court Action because they believed that the Debtor was not properly maintaining the Premises. First Manhattan's desire to keep the Receiver in place for the same reasons should carry significant weight.

26. Indeed, there is a serious question whether the Debtor has ample incentive to adequately manage and maintain the Premises, which further weighs in favor First Manhattan's position that the Receiver is necessary to protect the Premises for the benefit of all creditors. For these reasons, it is in the best interest of all creditors, including First Manhattan, for the Receiver to remain in place.

SB/967480.1/059107

**CONCLUSION**

27. For all the above reasons and the reasons set forth in the Declarations of Adam L. Rosen and Thomas P. Battistoni filed in support of the Motion, it is respectfully submitted that the Motion should be granted, and the Receiver should be excused from compliance with Bankruptcy Code §§543(a) and (b)(1).

28. Notice of this Motion has been given pursuant to the Order Scheduling Hearing on Shortened Notice and Limiting Notice of the Motion in Accordance with Local Rule 9006-1(b).

29. No prior request for the relief sought in this Motion has been made to this Court.

WHEREFORE, First Manhattan requests that the Court grant the Motion, and grant such further relief as is proper under the circumstances.

Dated: Jericho, New York
August 9, 2011

**SILVERMANACAMPORA LLP**
Attorneys for First Manhattan Developments REIT


By: __s/ Adam L. Rosen_____
Kenneth P. Silverman
Adam L. Rosen
100 Jericho Quadrangle, Suite 300
Jericho, New York 11573
(516) 479-6300