**SILVERMANACAMPORA LLP**

100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Kenneth P. Silverman
Adam L. Rosen
Brett S. Silverman

**SCHIFF HARDIN, LLP**

666 Fifth Avenue, 17th Floor
New York, New York 10103
(212) 753-5000
Thomas P. Battistoni
Louis T. DeLucia

Attorneys for First Manhattan Developments REIT

Hearing Date: September 15, 2011
  Time:  10:00 a.m.

Objection Deadline: September 8, 2011
  Time:  4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                             Chapter 11

  785 PARTNERS LLC,                                Case No. 11-13702 (SMB)

              Debtor.
-------------------------------------------------------------x

### MOTION OF FIRST MANHATTAN DEVELOPMENTS REIT
### FOR ORDER DISMISSING DEBTOR'S CHAPTER 11 CASE, OR IN
### THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY

First Manhattan Developments REIT ("First Manhattan"), a secured creditor of 785 Partners LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its attorneys, SilvermanAcampora LLP, respectfully submits this motion (the "Motion") for an order (a) dismissing the Debtor's bankruptcy case pursuant to section 1112(b) of title 11, United States Code (the "Bankruptcy Code"), (b) alternatively granting First Manhattan relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(1) and/or (2), and (c) granting further relief as this Court may deem proper, and respectfully represents as follows:[1]

---

[1] This Court has jurisdiction to hear this motion under 28 U.S.C. §§157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief sought herein is Bankruptcy Code sections 362(d)(1) and (2), and 1112(b).

**PRELIMINARY STATEMENT**

1. By this Motion, First Manhattan seeks entry of an order (a) dismissing the Debtor's bankruptcy case pursuant to Bankruptcy Code section 1112(b), (b) alternatively granting First Manhattan relief from the automatic stay pursuant to Bankruptcy Code sections 362(d)(1) and/or (2).

2. This case is a "single asset real estate"[2] case, which was filed to stay a foreclosure action which has been pending for over 10 months.[3] Furthermore, as is common in many single asset real estate cases, this case, essentially, is a two-party dispute. Moreover, it is undisputed that (a) the Debtor has failed to make any mortgage payments for the past two years, (b) the Real Property (defined below) is a condominium project which is not complete and the New York State Attorney General has not approved the condominium plan, (c) none of the units in the Real Property are sold, and (d) the Debtor has no income or no ability to pay the expenses associated with maintaining and securing the Real Property.

3. As demonstrated below and in the declarations to be filed in support of the Motion, the Debtor's case should be dismissed for several independent reasons, including: (i) the case was filed in "bad faith", (ii) the Debtor has not, and cannot pay the expenses necessary to preserve and maintain the Real Property, (iii) the Debtor has no equity in the Real Property, (iv) the value of the Real Property is diminishing and, (v) the case was filed with no reasonable prospect for rehabilitation or reorganization. Alternatively, First Manhattan should be granted relief from the automatic stay to complete its foreclosure action because the Debtor has no equity in the Real Property and the Real Property is not necessary for an effective reorganization that has a reasonable possibility of occurring within a reasonable time frame.

---

[2] In its chapter 11 petition, the Debtor acknowledges that this case is a "single asset real estate" case, as that term is defined by Bankruptcy Code section 101(51B).

[3] Indeed, the Debtor's petition was filed on the date of and immediately preceding the oral argument on First Manhattan's predecessor's motion for summary judgment in a foreclosure action.

## BACKGROUND

4. On August 3, 2011 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 11 of the Bankruptcy Code in this Court.

5. On August 9, 2011, First Manhattan filed a motion seeking an "Order Pursuant to 11 U.S.C. §543(d)(2) Excusing the Receiver from Requirements Imposed by 11 U.S.C. §§543(a) and (b)(1)" [ECF No.7 ].[4]

6. To date, no committee, examiner or trustee has been appointed in the Debtor's case.

**The Loan**

7. In or about January 5, 2007, PB Capital Corporation, as Administrative Agent for lenders PB Capital Corporation and TD Bank, N.A. (collectively, the "Initial Lenders"), and the Debtor[5], entered into three mortgages (collectively, the "Mortgages") which secure promissory notes (the "Notes", together with the Mortgages, the "Loan") in the aggregate principal amount of up to approximately $84 million, to develop the real property known as, and located at, 306 West 48th Street, or 785 Eighth Avenue, New York, New York (the "Real Property"). The purpose of the Loan was to fund the construction of a condominium apartment building. The Debtor was expected to sell all of the units of the Real Property in bulk, instead of renting or selling individual units to end users.[6]

8. In or about July 2009, the Loan matured and the outstanding principal amount of the Loan, and all accrued interests and other costs, became immediately due and payable by the Debtor. The Debtor failed to pay the outstanding principal balance and accrued interest. On

---

[4] The Receiver Motion is currently pending before the Court and the hearing has been adjourned to September 15, 2011 at 10:00 a.m.

[5] In addition to the Loan, Kevin O'Sullivan and Donal O'Sullivan executed certain agreements as guarantors of the Debtor's obligations under the Loan.

[6] As more fully described herein, the Debtor entered into a contract for the bulk sale of all of the units in the Real Property, which was part of the consideration for providing the Loan. That Contract is currently in default and the subject of litigation.

July 23, 2009, the Debtor and the Initial Lenders entered into a letter agreement (the "Loan Extension"), which provided for, among other provisions, a revised maturity date for the Loan of August 7, 2009 (the "Extended Maturity Date").

9. Upon the Extended Maturity Date, the Debtor once again failed to pay the outstanding principal balance and accrued interest on the Loan. As of the Petition Date, First Manhattan holds a claim against the Debtor in excess of $101 million.

**The Real Property**

10. The Real Property consists of the land and a 42-story building, which includes 122 units for residential living (collectively, the "Units") and one space for commercial use.

11. As set forth below, the Real Property has been under the control and management of the Receiver (defined below) appointed by the Supreme Court of the State of New York, County of New York (the "State Court") in connection the Foreclosure Action (defined below).

12. The Real Property was developed to be a condominium, however, the requisite condominium approvals have not been obtained from the New York State Attorney General (the "Approvals"). Thus, because the Debtor has failed to obtain the Approvals, none of the Units have or could been sold. Consequently, there is no one occupying the building.

13. Moreover, the Real Property was conceived and developed in order to take advantage of a certain tax abatement available under the New York City Department of Housing Preservation and Development §421-a ("Section 421-a"). Pursuant to Section 421-a, the owners of the Real Property are entitled to 10 years of tax abatement (the "Abatement") from the applicable real property taxes.[7] The Abatement declines incrementally over time, starting

---

[7] Section 421-a was amended to favor low income property development, however, because development of the Real Property was commenced prior to the amendment's effective date, the amendment does not apply to the Real Property.

from the completion of the Real Property, until it expires after the 10th year, as follows (the "Abatement Period"):

| Year After Completion | Percentage of Taxes Exempted |
|---|---|
| 1-2 | 100% |
| 3-4 | 80% |
| 5-6 | 60% |
| 7-8 | 40% |
| 9-10 | 20% |

14. Because the Real Property has been completed for more than two (2) years, the Debtor has deprived potential purchasers of the Units of the full benefits of the Abatement. Furthermore, with every day that goes by, the benefit of the Abatement is being diminished. Moreover, the benefits of the Abatement cannot be realized, and may be lost to potential purchasers of the Units, if the Debtor attempted to rent the Units, because there is a statutory formula setting "a maximum initial monthly rent (generally equivalent to prevailing rates in the neighborhood) [a requirement] that units remain rent stabilized for the duration of the [Abatement Period]. Alternatively, condominiums could be sold at any price, since the tax savings will be passed on to the individual owner…."[8] Thus, the only way to maximize the Real Property's value is to sell the Units.

15. On or about April 13, 2006, the Debtor entered into a contract for bulk sale (the "Contract") of all of the Units with Fuerta Property Limited ("Fuerta"), an Irish limited liability company.[9] Upon entering into the Contract, Fuerta escrowed $17,772,816.55 (the "Escrow") as a deposit for the bulk sale purchase of the Units.[10] Fuerta and the Debtor were scheduled to close the Contract and effectuate the bulk sale contemplated therein on August 5, 2009 (the "Closing"). It is alleged by Fuerta that on August 4, 2009 (the day before the Closing), Fuerta

---

[8] *See* http://www.planyc.org/taxonomy/term/53.

[9] The Contract was amended for the fifth time on or about February 6, 2009.

[10] The Escrow is being held by Seiden & Schein, P.C., a named defendant in the Foreclosure Action (defined below).

informed the Debtor that it was terminating the Contract on the grounds that the Debtor allegedly failed to comply with a certain conveyance provision of the Contract.[11] Furthermore, Fuerta alleges, that on the same day it allegedly made a demand upon the Debtor for the return of the Escrow.

16. To date, the Debtor has not entered into any further bulk sale contracts to sell the Units.

17. The Real Property has never, and is currently not producing any revenue or income. Since the appointment of the Receiver, the Initial Lenders have made "protective advances" of approximately $545,796.05[12] to the Receiver to pay the expenses related to maintaining and securing the Real Property. Those protective advances were made in accordance with the terms of the Loan, and the amount of the advances has been added to the outstanding Loan balance.

18. First Manhattan believes that the fair market value of the Real Property is less than $101,000,000, the approximate amount due to First Manhattan as of the Petition Date. First Manhattan intends to submit evidence at the hearing on the Motion regarding the fair market value of the Real Property.

**The Foreclosure Action**

19. On September 27, 2010, the Initial Lenders commenced an action (the "Foreclosure Action") to foreclose on the Loan, in the State Court, styled "PB Capital Corporation, as Administrative Agent for Lenders, PB Capital Corporation and TD Bank, N.A. v. 785 Partners LLC, Kevin O'Sullivan, Donal O'Sullivan, *et al.*" (Index No. 810039/2010).

---

[11] Fuerta alleges that the Debtor was obligated to convey the first Unit on or before July 21, 2009.
[12] This amount includes all advances for expenses incurred by the Real Property, remitted to the Receiver through and including July 11, 2011. This amount does not include attorneys' fees or interest on the Loan.

20. On or about September 30, 2010, the Initial Lenders filed a motion with the State Court seeking the emergency appointment of a receiver for the Real Property in order to take control of and secure the Real Property during the pendency of the Foreclosure Action.

21. On October 6, 2010, the State Court entered an Order (the "Appointment Order"), appointing Gerald Kahn as the receiver (the "Receiver") for the Real Property. Pursuant to the Appointment Order, the Receiver was authorized to: "exercise the following limited powers, duties and directions: (1) to take control of, secure and protect the mortgaged premises, (2) to provide electricity and heat so that pipes will not burst and buildings safety systems are operable, [and] (3) to keep in place insurance coverage." Appointment Order, at 2–3. The Appointment Order specifically prevented the Receiver from leasing any units in the Real Property to avoid diminishing its highest and best sale value as a new condominium building with Section 421-a benefits in place. Thereafter, on November 18, 2010, the State Court entered an Order authorizing the Receiver to retain Sanjay Ghandi of New York City Management LLC to act as property manager for the Real Property.

22. On February 25, 2011, the Initial Lenders filed a motion for summary judgment in the Foreclosure Action. A hearing (the "Summary Judgment Hearing") was scheduled to be heard on August 3, 2011. The Summary Judgment Hearing was stayed by the filing of the Debtor's chapter 11 case.

23. On July 29, 2011, First Manhattan acquired the Initial Lenders' interest in the Loan, and related agreements including certain guarantees. As of the Petition Date, First Manhattan holds a claim against the Debtor in an amount in excess of $101 million.

**RELIEF REQUESTED**

24. By this Motion, First Manhattan seeks the entry of an order dismissing this case pursuant to Bankruptcy Code section 1112(b), or in the alternative, granting First Manhattan relief from the automatic stay pursuant to Bankruptcy Code sections 362(d)(1) and/or (2).

**I.**

**<u>Dismissal of the Debtor's Case</u>**

25. Bankruptcy Code section 1112(b) provides, in pertinent part:

> (1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. §1112(b)(1). Furthermore, Bankruptcy Code section 1112(b)(4) provides a list of sixteen (16) factors that constitute "cause", however, the list is "illustrative, not exhaustive." *See C-TC 9th Avenue Partnership v. Norton Company (In re C-TC 9th Avenue Partnership)*, 113 F.3d 1304, 1311, n.5 (2nd Cir. 1997) (citing House Report No. 95-595, 95th Cong., 1st Sess. at 405-6, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6363-64 "[T]he list [contained in §1112(b)] is not exhaustive. The Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases."); *see also In re Loco Realty Corp.*, 2009 WL 2883050, *2 (Bankr. S.D.N.Y. 2009); *In re Strawbridge*, 2010 WL 779267, *3 (Bankr. S.D.N.Y. 2010).

26. The burden of demonstrating "cause" is born by the movant. *See In re Loco Realty Corp.*, 2009 WL 2883050 at *2. "[A] motion to dismiss under section 1112(b) ... requires a showing of cause by a preponderance of the evidence...." *In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (quoting *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004)).

27. "The bankruptcy court may 'dismiss a Chapter 11 [petition] for any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy reorganization process.'" *In re 347 Linden LLC*, 2011 WL 2971496, *5 (E.D.N.Y. 2011) (quoting *In re HBA East, Inc.*, 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988)).

A. Dismissal for Substantial or Continuing
Loss to or Diminution of the Estate and the
<u>Absence of a Reasonable Likelihood of Rehabilitation</u>

28. Of the enumerated factors that constitute "cause" to dismiss a chapter 11 bankruptcy case, Bankruptcy Code section 1112(b)(4)(A) provides that "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1112(b)(4)(A). "A court relying on the language of § 1112(b)(4)(A) must first determine whether the estate is suffering substantial or continuing loss[es] ... or diminution, before also deciding whether there is a reasonable likelihood of rehabilitation." *In re 347 Linden LLC*, 2011 WL 2971496 at *5; *see also In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009).

29. As such, Bankruptcy Code section 1112(b)(4)(A) is conjunctive in nature, where both prongs must exist before a court may consider dismissal under this section. Court's have found that "'[a] debtor's negative post-petition cash flow and inability to pay current expenses establishes that the estate is suffering continuing losses.'" *In re 347 Linden LLC*, 2011 WL 2971496 at *5; see also *Taub*, 427 B.R. at 231 ("One indication of continuing loss to the bankruptcy estate is negative cash flow after the bankruptcy case is commenced…Another indicator is the debtor's inability to meet the basic operating expenses critical to the viability of its enterprise, notwithstanding the protection of the automatic stay."); *In re 3868–70 White Plains Road, Inc.*, 28 B.R. 515, 518 (Bankr.S.D.N.Y.1983) (finding estate suffered continuous loss where the failed to make any mortgage payments for the six months after filing). When analyzing the losses, it is unnecessary that they be large, "'[a]ll that need be found is that the estate is suffering some diminution in value." *Taub*, 427 B.R. at 231 (quoting *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y.1988)).

30. Here, the facts and circumstances of this case clearly indicate that the first prong of Bankruptcy Code section 1112(b)(4)(A) has been satisfied. The Debtor has never generated any revenue or income from operation of the Real Property. Moreover, as explained above, the

Debtor has been incapable of paying any of its expenses, and has not made any payments on the Loan for the last two years, and is allowing the Abatement to lapse. Therefore, based on the foregoing, the Debtor's estate is continuing to suffer devaluation, and thus, the first prong of establishing "cause" under Bankruptcy Code section 1112(b)(4)(A) has been met.

31. As to the second prong of Bankruptcy Code section 1112(b)(4)(A), "rehabilitation means to put back in good condition and reestablish on a sound basis." *See In re BH S & B Holdings, LLC*, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010) (quoting *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr.S.D.N.Y.2003)); *see also Taub*, 427 B.R. at 231. "Without a reasonable amount of assets and a feasibly operating business there is no logic in continuing a Chapter 11 [case]." *Taub*, 427 B.R. at 231 (quoting *In re 312 W. 91st Street Co.*, 35 B.R. 346, 347 (Bankr. S.D.N.Y. 1983)).

32. Here, the Debtor has no income from the Real Property, or from any other source. Furthermore, the Real Property is the Debtor's only asset, in which the Debtor has no equity. Moreover, the Real Property has laid dormant for two years which has negatively affected the value of the Real Property for numerous reasons, including (a) reducing the benefit of the Abatement, (b) aging of the building, appliances, and other amenities, and (c) accruing expenses that are being incurred despite the lack of income being generated. Thus, because the Debtor cannot afford to pay its most fundamental expenses, there is little likelihood that it can reestablish its business on a "sound basis." Therefore, First Manhattan believes that the second prong of establishing "cause" under Bankruptcy Code section 1112(b)(4)(A) has been met.

33. Based on the foregoing, First Manhattan believes that it has met its burden of proving that "cause" for dismissal under Bankruptcy Code section 1112(b)(4)(A). Therefore, First Manhattan respectfully requests that the Debtor's case be dismissed immediately in order to avoid any further harm.

060747/971235.2/SB

B. Dismissal for "Bad Faith"

34. Although "bad faith" is not one of the enumerated factors listed under Bankruptcy Code section 1112(b), courts in this Circuit have recognized "bad faith" as another factor that might constitute "cause" to dismiss a debtor's case. *See, e.g. In re C-TC 9th Avenue Partnership*, 113 F.3d at 1310; *In re Loco Realty Corp.*, 2009 WL 2883050 at *2; *In re Halal 4 U LLC*, 2010 WL 3810860 *2. The Bankruptcy Code does not supply a definition for either "bad" or "good" faith, however, a debtor's good faith is "an implicit prerequisite to filing a bankruptcy petition", "'the absence of which may constitute cause for dismissal.'" *In re Loco Realty Corp.*, 2009 WL 2883050 at *2 (quoting *Carolin Corporation v. Miller*, 886 F.2d 693, 698 (4th Cir.1989)). "Section 1112(b) and its associated 'good faith' doctrine are primarily concerned with the underlying question whether reorganization is the proper course of action in a particular debtor's case. On that score, dismissal of a chapter 11 petition—like dismissal of any lawsuit—is not imposed principally as a sanction for bad intentions or obstreperous behavior. Instead, dismissal flows from the legal determination the debtor is not entitled to the remedy it seeks." *In re Loco Realty Corp.*, 2009 WL 2883050 at *2 (quoting *In re Gucci, et al.*, 174, B.R. 401, 410 (Bankr. S.D.N.Y. 1994)) (internal quotes omitted).

35. "Courts consider multiple factors when determining whether a filing was made in bad faith, including whether 'the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights' and the debtor's cash flow." *In re Halal 4 U LLC*, 2010 WL 3810860 *2 (Bankr. S.D.N.Y. 2010).

36. The court in *HBA East*, *supra*, stated that "[a]n important factor to consider in determining whether a Chapter 11 case was initiated in good faith is whether the reorganization effort essentially involves a two-party dispute which can be resolved in a non-bankruptcy forum." *In re HBA East, Inc.*, 87 B.R. at 260. The HBA East court further stated that:

> These Chapter 11 cases do not represent efforts pitched to a "business reorganization" or to "restructure a business's finances". They are essentially a two-party civil lawsuit involving non-bankruptcy law brought in the bankruptcy court in the guise of being a reorganization of some sort under Chapter 11. Chapter 11 was never intended to be used as a fist in a two party bout. The Chapter is entitled reorganization and not litigation… Reorganization presupposes the existence of monies to pay the expenses of operating a business and assets to generate the funds for implementation of a reorganization plan.

*In re HBA East, Inc.*, 87 B.R. at 260-61.

37. Here, this case is essentially a "two-party" dispute, where the parties' differences could have been, and should be settled by the Summary Judgment Hearing. This case is nothing more than an attempt to stay the Foreclosure Action and frustrate the Initial Lender's ability (and now First Manhattan's ability) to obtain the State Court remedies to which it is entitled under the Loan documents. As set forth above, the Debtor has no income or financing with which it can pay the expenses related to the Real Property. Moreover, the Debtor has failed to obtain the Approvals, which prevents the Debtor from selling any of the Units. Thus, it certainly appears (and First Manhattan believes that the evidence will demonstrate that) the Debtor has no reasonable prospect to reorganize or rehabilitation within a reasonable time period.

38. Additionally, the Second Circuit in *In re C-TC 9th Avenue Partnership*, *supra*, has adopted a list of eight (8) other factors that might constitute "bad faith" on the part of a debtor (the "C-TC Factors"):

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

*In re C-TC 9th Avenue Partnership*, 113 F.3d at 1311. The C-TC Factors "are not to be applied mechanically and the existence of bad faith does not depend on any particular combination of factors, but rather must be gauged from the facts and circumstances of each case." *In re Loco Realty Corp.*, 2009 WL 2883050 at *3.

39. Here, when applying the facts and circumstances of the Debtor's case to the C-TC Factors, it is clear that the Debtor has filed its petition in "bad faith": (i) the Real Property is the Debtor's only asset; (ii) the Debtor's unsecured creditor body potentially holds claims which are small in relation to the debt held by First Manhattan;[13] (iii) the Real Property is the subject of the Foreclosure Action which was instituted after the Debtor's default on the Loan; (iv) the Debtor's bankruptcy case is essentially a two-party dispute which can be resolved in the Foreclosure Action; (v) as stated above, the Debtor filed the Petition on the eve of the Summary Judgment Hearing; (vi) the Debtor has no cash flow or revenues; (vii) the Debtor cannot meet any of its expenses, including, but not limited to the payment of (a) real estate taxes, (b) structural repairs, (c) utilities, or (d) insurance; and (viii) the Debtor has no employees.

40. Dismissal of a chapter 11 bankruptcy case is an extraordinary remedy, however, "a debtor must evidence 'some feasibility of effectuating a viable reorganization plan. In this regard, it has been stated, 'debtors should not continue ... under the umbrella of the reorganization court beyond the point at which reorganization no longer remains a realistic undertaking, unless liquidation would proceed more expeditiously and less expensively under the control of the debtor. In addition, it is also clear that once rehabilitation becomes unrealistic, the debtor should not be permitted to remain under [c]hapter 11.'" *In re Loco Realty Corp.*, 2009 WL 2883050 at *3 (quoting *In re McDermott*, 78 B.R. 646, 651 (Bankr. N.D.N.Y. 1985).

---

[13] Among the four unsecured creditors listed by the Debtor in its amended petition, the Debtor's lists Time Square Construction, Inc. ("Time Square") as holding an undisputed claim against the estate in the amount of $14,229,106. First Manhattan disputes the validity and amount of the claim alleged to be held by Time Square. Moreover, Time Square is an entity controlled by Kevin O'Sullivan, one of the Debtor's insiders. According to the Debtor's amended petition, the other three unsecured creditors listed, hold claims in the aggregate amount of $55,000.

41. It is undeniable that the Debtor has filed this bankruptcy with no genuine prospect for rehabilitation. It has been more than two years since the maturity of both the Loan and the Loan Extension, whereby the Debtor has not made one payment to either the Initial Lenders or to First Manhattan. Furthermore, a sale of the building will not yield sufficient funds in order to satisfy the Loan. Moreover, it is indisputable that all of the C-TC Factors exist here. Lastly, based on the grim circumstances surrounding the Debtor's financial condition, coupled with the inability to care for the Real Property, allowing the Debtor to continue in chapter 11 will only create needless administrative expenses.

42. All of the foregoing demonstrates and supports the rebuttable presumption of "bad faith" and, thus, the Court should dismiss this bankruptcy proceeding immediately, in accordance with Bankruptcy Code section 1112(b) and the foregoing case law.

**II.**

**First Manhattan is Entitled to Relief from the Stay**

43. Alternatively, First Manhattan is entitled to relief from the automatic stay pursuant to the provisions of Bankruptcy Code section 362(d).

44. Bankruptcy Code section 362(d) provides in relevant part that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. §362(d).

45. Bankruptcy Code sections 362(d)(1) and (2) are "disjunctive; the Court must lift the stay if the movant prevails under either of the two grounds." *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 321 (Bankr. S.D.N.Y. 2001).

A. <u>Cause Exists to Grant First Manhattan Relief from the Automatic Stay</u>

46. Bankruptcy Code section 362(d)(1) provides that the Court shall grant relief from the automatic stay for "cause". *See* 11 U.S.C. §362(d)(1). "Although not expressly stated in section 362(d)(1), it is well established that a debtor's bad faith constitutes "cause" for relief from the automatic stay under that section." *In re 68 West 127 Street, LLC*, 285 B.R. 838, 843 (Bankr. S.D.N.Y. 2002). When analyzing whether the debtor's actions constitute "bad faith" to establish cause, courts utilize the same standard applied by a court when determining whether a case should be dismissed under Bankruptcy Code section 1112(b). *See In re Project Orange Associates, LLC*, 432 B.R. 89, 112-113 (Bankr. S.D.N.Y. 2010); *see also In re AMC Realty Corp.*, 270 B.R. 132, 141 (Bankr. S.D.N.Y. 2001).

47. "When it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing; then the Chapter 11 petition may be frivolous." *In re C-TC 9th Avenue Partnership*, 113 F.3d at 1310. Thus, courts have determined that a petition is filed in bad faith when it is filed "solely to delay and frustrate" a creditor's attempt to obtain state court relief or when a debtor "possessing a single asset has no realistic chance for rehabilitation of any ongoing business and files a bankruptcy petition in the hopes of gaining relief from another action that essentially involves the resolution of a two-party dispute." *In re MacInnis*, 235 B.R. 255 (Bankr. S.D.N.Y. 1998); *In re Island Helicopter, Inc.*, 211 B.R. 453 (Bankr. E.D.N.Y. 1997).

48. Here, as demonstrated above, the Debtor filed its petition in "bad faith". It is evident that the Debtor filed the Petition in order to stop the Summary Judgment Hearing. Furthermore, it is also clear that the Debtor's bankruptcy is essentially a two-party dispute, and the Debtor has no reasonable possibility of rehabilitation. Moreover, as mentioned above, First

Manhattan has demonstrated that all of the C-TC Factors exist and, thus, "cause" has been established. Because all of the factors of "bad faith" exist here, the automatic stay imposed by Bankruptcy Code section 362 should be lifted to afford First Manhattan the ability to exercise its remedies in the Foreclosure Action.

B.  The Debtor Lacks Equity in the Real Property and the
    Real Property is not Necessary for the Debtor's Reorganization

49. In order to be entitled relief from the automatic stay under Bankruptcy Code section 362(d)(2), it must be demonstrated that (a) the debtor has no equity in the property, and (b) the property is not necessary for an effective reorganization. *See* 11 U.S.C. §362(d)(2); *see also In re YL West 87th Holdings I LLC*, 423 B.R. 421, 427 (Bankr. S.D.N.Y. 2010)("Section 362(d)(2) is written in the conjunctive; both (A) and (B) must be satisfied before a court may grant relief from the automatic stay under this subsection.").

50. The moving party bears the burden of proving lack of equity. *See* 11 U.S.C. §362(g)(1).

51. According to the evidence to be presented at the hearing on the Motion, the Debtor has no equity in the Real Property. Thus, First Manhattan will be able to satisfy its burden of proving that the Debtor lacks equity in the Real Property.

52. Once the moving party seeking relief from the stay under Bankruptcy Code section 362(d)(2) has established that the debtor lacks equity in the subject property, the debtor, pursuant to Bankruptcy Code section 362(g)(2), has the burden of proving that the subject property is necessary for an effective reorganization. *See* 11 U.S.C. §362(g)(2); *see also In re YL West 87th Holdings I LLC*, 423 B.R. at 428; *United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

53. The Debtor is incapable of formulating a confirmable plan of reorganization, because a sale of the Real Property cannot satisfy First Manhattan's claim, and thus, the Real

Property cannot be necessary for rehabilitation of the Debtor. Moreover, the Debtor has no reasonable possibility of reorganizing within a reasonable time period.

54. "To demonstrate 'necessity,' [the debtor must] show that 'the property is essential for an effective reorganization that is in prospect' and that there is a 'reasonable possibility of a successful reorganization within a reasonable time.'" *Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*, 101 F.3d 882, 886 (2d Cir. 1996) (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988).

55. Because the Debtor is incapable of rehabilitating, coupled with the Debtor's lack of equity in the Real Property, First Manhattan is entitled to relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(2). Therefore, based on the foregoing, the Court should lift the automatic stay to permit Foreclosure Action to proceed.

## **CONCLUSION**

56. Notice of this Motion has been given to (a) the Debtor and its attorneys, (b) the Debtor's creditors according to the Debtor's petition and other filings in this case, (c) all individuals and entities having filed a notice of appearance in the Debtor's case, and (d) the United States Trustee. First Manhattan submits that no further notice is required.

57. No prior request for the relief sought in this Motion has been made to this Court.

 060747/971235.2/SB

**WHEREFORE**, First Manhattan respectfully requests that this Court: (i) dismiss the Debtor's case pursuant to Bankruptcy Code section 1112(b); alternatively, (ii) grant First Manhattan relief from the automatic stay pursuant to Bankruptcy Code section 362(b)(1) and/or (b)(2); and (iii) grant such other further and different relief as this Court deems just and proper.

Dated: Jericho, New York
     August 19, 2011

**SILVERMANACAMPORA LLP**
Attorneys for First Manhattan Developments REIT


By:    Adam L. Rosen
     Kenneth P. Silverman
     Adam L. Rosen
     Brett S. Silverman
100 Jericho Quadrangle, Suite 300
Jericho, New York 11573
(516) 479-6300


**SCHIFF HARDIN, LLP**
Attorneys for First Manhattan Developments REIT
666 Fifth Avenue, 17th Floor
New York, New York 10103
(212) 753-5000
Thomas P. Battistoni
Louis T. DeLucia