UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                               :
                                                     :    Chapter 11
    785 PARTNERS LLC,                     :    Case No. 11-13702 (SMB)
                                                     :
        Debtor.     :
------------------------------------------------------X

# MEMORANDUM DECISION AND ORDER
# REGARDING STANDING AND ALLOWANCE
# OF CLAIM FOR VOTING PURPOSES

**A P P E A R A N C E S:**

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299

    Sheldon I. Hirshon, Esq.
    Michael T. Mervis, Esq.
    Craig A. Damast, Esq.
    Lawrence S. Elbaum, Esq.
        Of Counsel

*Attorneys for Debtor and Debtor in Possession*


SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753

    Gerard R. Luckman, Esq.
    Jay S. Hellman, Esq.
        Of Counsel

    ― and ―

SCHIFF HARDIN, LLP
666 Fifth Avenue, 17th Floor
New York, New York 10103

    Thomas P. Battistoni, Esq.
    Louis T. DeLucia, Esq.
        Of Counsel

*Attorneys for First Manhattan Developments REIT*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

785 Partners LLC (the "Debtor") is the owner and developer of an unoccupied apartment building located at 785 Eighth Avenue in Manhattan (the "Property"). First Manhattan Developments REIT ("First Manhattan") presently holds, by assignment, a note executed by the Debtor that is secured by the Property. According to the proof of claim filed by First Manhattan, the Debtor owed it in excess of $105 million as of the petition date.

The Debtor has filed a plan and informally objected to First Manhattan's claim contending, *inter alia*, that First Manhattan lacks standing to assert it. In response, First Manhattan seeks to estimate its claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Motion").[1] The Court concludes that First Manhattan has standing as a secured creditor in this case and estimates its secured claim for voting purposes in the amount of $1.00.

## BACKGROUND

The Debtor acquired the Property in or about January 2007. Pursuant to a Building Loan Agreement,[2] dated as of January 25, 2007, the Debtor borrowed approximately $84 million from PB Capital Corporation and Commerce Bank, N.A. (the "Original Lenders"), giving a mortgage on the Property to secure the debt. The Building Loan Agreement, which is governed by New York Law, (Building Loan Agreement § 8.23, at 79), provided that "[a] Lender may at any time assign to any Eligible Lender . . . all or a proportionate part of all of its rights and obligations

---

[1]    Rule 3018(a) states in pertinent part that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting the plan." FED. R. BANKR. P. 3018(a).

[2]    The Building Loan Agreement is annexed as Exhibit A to the *Certification of Barry Zagdanski*, dated January 13, 2012 (ECF Doc. # 119). Citations to "ECF" refer to the electronic docket in this case.

under this Agreement and its Note . . . ." (*Id.* § 8.13, at 75.)  It defined an "Eligible Lender" to include

> (i) A real estate investment trust, . . . pension fund or pension advisory firm . . . (ii) investment company, money management firm or "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act of 1933, as amended, or an institutional "accredited investor" within the meaning of Regulation D under the Securities Act of 1933, as amended, which is regularly engaged in the business of making or owning loans or loans of similar types to the Loan, (iii) an investment fund, limited liability company, limited partnership or general partnership (a "Permitted Investment Fund) where an Eligible Lender or a Permitted Fund Manager acts as the general partner, managing member or fund manager and at least fifty percent (50%) of the equity interests in such Permitted Investment Fund are owned, directly or indirectly, by one or more of the following: an Eligible Lender, an institutional "accredited investor", within the meaning of Regulation D promulgated under the Securities Act of 1933, as amended, and/or a "qualified institutional buyer" within the meaning of Rule 144A promulgated under the Securities Exchange Act of 1934, as amended (provided each institutional "accredited investor" of "qualified institutional buyer" meets the test set forth in clause (v) (A) below), (iv) a commercial paper conduit which satisfies the following criteria: (A) an independent third party provides the conduit with credit enhancement in the form of liquidity support to satisfy the conduit's obligations, which liquidity support provider is otherwise an Eligible Lender and (B) the conduit is directly administered by a Person that is otherwise an Eligible Lender or an Affiliate thereof, (v) a Person substantially similar to any of the foregoing entities described in clauses (i) or (ii) of this definition, **and as to each of Persons described in clauses (i) or (ii)** provided such Person (A) has total assets (in name or under management) in excess of $5,000,000,000 and (except with respect to a pension advisory firm or similar fiduciary) capital/statutory surplus or shareholder's equity of $400,000,000; and (B) is regularly engaged in the business of making or owning commercial real estate loans or commercial loans secured by a pledge of interests in a mortgage borrower or (vi) any Person Controlled by any one or more of the Persons described in this definition.

(*Id.* § 1.01, at 5-6 (emphasis added).)

The parties dispute whether First Manhattan is an Eligible Lender under this definition. Both sides agree that First Manhattan is a real estate investment trust, or REIT. Hence, it fulfills the requirements under subparagraph (i). They dispute, however, whether First Manhattan (or any other REIT) must also satisfy the financial and business criteria described in subparagraph

3

(v), *viz.* whether First Manhattan must have total assets exceeding $5 billion and equity exceeding $400 million and be regularly engaged in the "business of making or owning commercial real estate loans or commercial loans secured by a pledge of interests in a mortgage borrower." First Manhattan concedes that it does not satisfy this requirement.

**DISCUSSION**

The language of the single sentence that comprises the definition of Eligible Lender is difficult to parse. The Debtor argues that the definition of Eligible Lender is unambiguous and, pointing primarily to the bold-faced phrase in the block quotation above, maintains that it imposes financial and business requirements on First Manhattan that it admittedly does not meet. Consequently, it is not an Eligible Lender and lacks standing to be heard or vote in the case.[3]

The Debtor's interpretation finds some support in the quoted language. The bold-faced phrase does refer back to clauses (i) and (ii) and arguably means that the Persons listed in those subparagraphs must satisfy the financial and business requirements that follow immediately afterward. Moreover, First Manhattan's contrary interpretation renders the phrase surplusage. In fact, First Manhattan substituted ellipses for the phrase in its memorandum of law to bolster its own contention that the definition is unambiguous. (*See First Manhattan Developments REIT's Memorandum of Law Regarding the Assignability of Loan Agreements and Designation of Votes*, dated Jan. 31, 2012, at ¶ 5 (ECF Doc. # 139).) In addition, the exception in subparagraph (v) exempting a "pension advisory firm" from the financial and business requirements in subparagraph (v) would be unnecessary under First Manhattan's interpretation because a

---

[3] The debtor also points to other parts of the definition and the Building Loan Agreement in support of its position that all of the Eligible Lenders must meet some type of financial requirement. Suffice it to say that these provisions do not clarify the one sentence definition of Eligible Lender, and in light of the disposition of the Motion, it is unnecessary to discuss them.

4

"pension advisory firm" is listed in subparagraph (i) and would already be exempt for that reason.

On the other hand, the bold-faced language in subparagraph (v) seems to hang there, out of place, as if it was inadvertently left over from an earlier draft. It does not appear to bear any clear relationship to the proviso that immediately follows it ("and as to each of Persons described in clauses (i) or (ii) *provided. . . .*") (emphasis added). Furthermore, if the definition of Eligible Lender meant what the Debtor contends, it would presumably say in a more direct manner that the financial and business requirements apply to the Persons listed in subparagraphs (i), (ii) and (iii). The convoluted and ungrammatical way in which the definition purports to express what the Debtor says it means makes it difficult to conclude as a matter of law that this is what the parties intended.

Accordingly, the Court concludes that the definition of Eligible Lender is ambiguous. Nevertheless, it is unnecessary to resolve the ambiguity in order to determine First Manhattan's standing. Even if First Manhattan did not meet the definition of an Eligible Lender, the assignment of the Building Loan Agreement and related documents was valid, and First Manhattan is a secured creditor and party in interest.

At the oral argument, the Debtor's counsel seemed to concede, with some flip-flopping, that although First Manhattan was not an Eligible Lender, it still held a secured claim by virtue of the assignment. (*Compare* Transcript of hearing held Feb. 2, 2012, at p. 7, lines 12-13 (First Manhattan is a creditor and the Debtor is not asking for rescission of the assignment); p. 8, lines 1-2 (First Manhattan is a creditor and holds a claim); p. 8, lines 19-23 (the debtor is not arguing

that the assignment was void); p. 24, lines 16-18 (First Manhattan holds a secured claim) *with* p. 17, lines 19-24 (the assignment is void).)

Even without the Debtor's concession, the assignment is valid under New York law. "[T]o reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, [a contractual] clause must contain express provisions that any assignment shall be void or invalid if not made in a certain specified way." *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (internal quotation marks and citation omitted); *accord Sullivan v. Int'l Fidelity Ins. Co.*, 465 N.Y.S.2d 235, 237-38 (N.Y. App. Div. 1983) ("[I]t has been consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments."); *see Allhusen v. Caristo Constr. Corp.*, 103 N.E.2d 891, 892 (N.Y. 1952) (noting that non-assignability language must be clear and definite). Absent clear voiding language, such an assignment gives the obligor no more than a claim for breach of contract against the assignor/obligee, but does not invalidate the assignment. *See Sullivan*, 465 N.Y.S.2d at 237; RESTATEMENT (SECOND) OF CONTRACTS § 322(2)(b), (c) (1981). Here, the Building Loan Agreement states that a Lender may assign its rights to an Eligible Lender. (Building Loan Agreement § 8.13, at 75.) It does not state that an assignment to an in-Eligible Lender is void or invalid. Accordingly, the assignment is valid.

The assignment conferred on First Manhattan the Original Lenders' rights as a secured creditor of the Debtor. As a creditor, First Manhattan is a "party in interest" and "may raise and may appear and be heard on any issue in [the case]." 11 U.S.C. § 1109(b). " 'The general theory behind . . . section [1109] is that anyone holding a direct financial stake in the outcome of the case should have an opportunity . . . to participate in the adjudication of any issue that may

6

ultimately shape the disposition of his or her interest.' " *Savage & Assocs., P.C. v. K & L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 60 (2d Cir. 2011) (quoting ALAN RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1109.01 (16th ed. 2011). First Manhattan has the largest financial stake in this case, and it may be heard on any issue that affects its interests.

The Debtor nevertheless contends that even if First Manhattan is a creditor, it still lacks standing because it is not an Eligible Lender, and should not be permitted to advance claims in a court of equity that it had no right to acquire in the first place. (*Letter from Sheldon I. Hirshon to Hon. Stuart M. Bernstein*, dated February 2, 2012, at 5 (ECF Doc. # 141).) The two cases the Debtor cited in its letter to the Court are distinguishable, and do not support its argument. In *Pelican Equity, LLC v. Brazell,* No. 09 Civ. 5927 (NRB), 2010 WL 3377452 (S.D.N.Y. Aug. 17, 2010), a non-bankruptcy case, the District Court held that an assignment made in violation of a judicial restraining order was void, conferred no rights on the putative assignee, and the latter lacked standing to assert claims under the assignment. *Id.* at *4, *7. In *In re Dino & Artie's Automatic Transmission Co., Inc.*, 68 B.R. 264 (Bankr. S.D.N.Y. 1986), the Bankruptcy Court denied a creditor's motion for relief from the automatic stay to foreclose a mortgage. The mortgage secured a note, and the note and mortgage were unenforceable under state law and subject to equitable subordination under the Bankruptcy Code. The Bankruptcy Court ruled that the creditor, as the holder of an invalid lien, was not a party in interest with respect to the property at issue. *Id.* at 268, 270.

In contrast to the facts presented in the Debtor's authorities, here, the assignment to First Manhattan was valid, not void, and First Manhattan acquired the rights of the Original Lenders as a secured creditor and "party in interest." Accordingly, the Debtor's objection to First Manhattan's standing is overruled.

7

Having concluded that First Manhattan has standing, the Court must estimate its claim. As noted, First Manhattan contends that it is owed in excess of $105 million. The Debtor scheduled the claim as a disputed, contingent and unliquidated claim in the sum of $81,212,506.00. The Debtor's plan places First Manhattan's secured claim in Class 3, and it is the only creditor in that class. For purposes of Class 3 voting, it does not matter if its claim is estimated at $1.00 or $100 million.[4] Accordingly, and although it appears to the Court that First Manhattan holds a claim for no less than the principal amount of the debt plus interest up to the petition date (assuming First Manhattan is undersecured) at the non-default rate, the Court will estimate its claim for voting purposes at $1.00.

So ordered.

Dated: New York, New York
       February 6, 2012

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Court

---

[4] The actual amount of First Manhattan's claim may also affect the outcome of the Class 7 vote since any unsecured portion will drop down into that class. The amount of First Manhattan's claim and the value of its collateral will be determined in connection with the confirmation proceeding.