# EXHIBIT A

Sheldon I. Hirshon (SH-0070)
Lawrence S. Elbaum (LE-4157)
Craig A. Damast (CD-4234)
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| 785 Partners LLC, | ) | Case No. 11-13702 (SMB) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S FIFTH AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Dated: May 9, 2012

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036-8299
Phone: (212) 969-3000
Fax: (212) 969-2900
Sheldon I. Hirshon
Lawrence S. Elbaum
Craig A. Damast

Counsel for Debtor and
Debtor in Possession

# TABLE OF CONTENTS

**Page**

## ARTICLE I

### DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND

1.1. Definitions.................................................................................................................1

1.2. Interpretation, Rules of Construction, Computation of Time, Settlement and Governing Law. ...................................................................................................8

    1.2.1    Defined Terms ...................................................................................8

    1.2.2    Rules of Interpretation ......................................................................9

    1.2.3    Computation of Time .......................................................................9

    1.2.4    Governing Law ................................................................................9

## ARTICLE II

### DESIGNATION OF CLAIMS AND INTERESTS

2.1. Summary of Designation of Claim and Interests ..................................................9

## ARTICLE III

### TREATMENT OF CLAIMS AND INTERESTS

3.1. Unclassified Claims ...........................................................................................10

3.2. Administrative Expense Claims.........................................................................10

    3.2.1    In General........................................................................................10

    3.2.2    Professional Compensation.............................................................10

3.3. Priority Tax Claims............................................................................................11

3.4. Class 1 (Non-Tax Priority Claims). ...................................................................11

3.5. Class 2 (Other Secured Claims). .......................................................................11

3.6. Class 3 (First Manhattan Claim). ......................................................................12

3.7. Class 4 (Time Square Claim). ...........................................................................12

3.8. Class 5 (Fuerta Claim). ......................................................................................13

3.9. Class 6 (End Unit Purchasers' Claims)..............................................................13

3.10. Class 7 (General Unsecured Claims). ................................................................13

3.11. Class 8 (Old Membership Interests). .................................................................14

i

# ARTICLE IV

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1.   Plan Funding ..........................................................................................................14

4.2.   Relinquishment of Time Square Lien ....................................................................14

4.3.   Cancellation and Surrender of Existing Securities and Agreements. ..................14

4.4.   Revesting of Assets and Operation of Business ...................................................15

4.5.   Retention of Causes of Action .............................................................................15

4.6.   Satisfaction of Claims ..........................................................................................16

4.7.   Continuation of Bankruptcy Injunction or Stays ................................................16

4.8.   Administration Pending Effective Date ................................................................16

4.9.   Corporate Action...................................................................................................16

# ARTICLE V

## CORPORATE GOVERNANCE AND MANAGEMENT OF THE POST-CONFIRMATION DEBTOR

5.1.   Corporate Existence ..............................................................................................16

5.2.   Management of Post-Confirmation Debtor ..........................................................16

5.3.   Board Of Managers of Post-Confirmation Debtor...............................................17

5.4.   Officers of Post-Confirmation Debtor ..................................................................17

# ARTICLE VI

## VOTING

6.1.   Voting Generally....................................................................................................17

6.2.   Nonconsensual Confirmation................................................................................17

# ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN

7.1.   Distributions to Holders of Allowed Claims Only ...............................................17

7.2.   Distribution Record Date ......................................................................................17

7.3.   Disbursing Agent ..................................................................................................18

7.4.   Rights and Powers of Disbursing Agent...............................................................18

7.5.   Delivery of Distributions. .....................................................................................18

     7.5.1     In General........................................................................................18

0279/69797-001 current/25250680v14

| | 7.5.2 | Timing of Distributions | 18 |
| --- | --- | --- | --- |
| | 7.5.3 | Distributions of Unclaimed Property | 18 |
| 7.6. | | Time Bar to Cash Payments | 18 |
| 7.7. | | Setoffs | 19 |

## ARTICLE VIII

## PROCEDURES FOR DISPUTED CLAIMS

| 8.1. | Resolution of Disputed Claims | 19 |
| --- | --- | --- |
| 8.2. | Estimation of Claims | 19 |
| 8.3. | No Partial Distributions Pending Allowance | 19 |
| 8.4. | Distributions After Allowance | 19 |

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| 9.1. | Assumption of Executory Contracts and Unexpired Leases | 20 |
| --- | --- | --- |
| 9.2. | Cure of Defaults of Assumed Executory Contracts and Unexpired Leases. | 20 |
| 9.3. | Pass-Through | 21 |
| 9.4. | Survival of Indemnification and Corporation Contribution | 21 |
| 9.5. | Insurance Policies | 21 |
| 9.6. | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 21 |
| 9.7. | Bar Date for Filing Claims for Rejection Damages | 21 |
| 9.8. | Reservation of Rights | 22 |
| 9.9. | Nonoccurrence of Effective Date | 22 |
| 9.10. | Contracts and Leases Entered Into After the Petition Date | 22 |

## ARTICLE X

## RELEASES AND INJUNCTIONS

| 10.1. | Releases by the Debtor | 22 |
| --- | --- | --- |
| 10.2. | Releases by Released Parties | 23 |
| 10.3. | Injunction | 23 |
| | 10.3.1 Violation of Injunctions | 24 |
| | 10.3.2 Consent to Injunctions | 24 |

0279/69797-001 current/25250680v14

## ARTICLE XI

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

| | | |
|---|---|---|
| 11.1. | Conditions Precedent to Confirmation | 24 |
| 11.2. | Conditions Precedent to the Effective Date | 24 |
| 11.3. | Waiver of Conditions | 25 |
| 11.4. | Effect of Failure of Conditions | 25 |
| 11.5. | Substantial Consummation | 25 |

## ARTICLE XII

## RETENTION OF JURISDICTION

| | | |
|---|---|---|
| 12.1. | Retention of Jurisdiction | 26 |

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

| | | |
|---|---|---|
| 13.1. | Immediate Binding Effect | 27 |
| 13.2. | Effectuating Documents; Further Transactions | 27 |
| 13.3. | Payment of Statutory Fees | 28 |
| 13.4. | Dissolution of Any Statutory Committee | 28 |
| 13.5. | Entire Agreement | 28 |
| 13.6. | Exemption From Certain Transfer Taxes | 28 |
| 13.7. | Amendment, Modification and Severability of Plan Provisions | 28 |
| 13.8. | Withholding and Reporting Requirements | 29 |
| 13.9. | Closing of Chapter 11 Case | 29 |
| 13.10. | Conflicts | 29 |
| 13.11. | Notices to Debtor and First Manhattan | 29 |
| 13.12. | Binding Effect | 30 |
| 13.13. | No Admissions | 30 |
| 13.14. | Allocation of Distributions Between Principal and Interest | 30 |
| 13.15. | Headings | 30 |

0279/69797-001 current/25250680v14

785 Partners LLC, as debtor and debtor in possession, proposes this fifth amended plan of reorganization for the resolution of outstanding Claims against and Interests in the Debtor pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Article I hereof.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

# ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

1.1.    <u>Definitions</u>.  As used in the Plan, the following terms shall have the following meanings:

"<u>8 Avenue</u>" means 8 Avenue and 48th Street Development LLC, the holder of 98.75% of the Old Membership Interests.

"<u>Adam Mirzoeff</u>" is, upon information and belief, a former director of Tower.

"<u>Administrative Expense Claim</u>" means a Claim for costs and expenses of administration of the Estate pursuant to sections 328, 330, 331, 503(b), 507(a)(2), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services, and payments for goods and other services and leased premises); (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of the Judicial Code; and (c) Professional Fee Claims.

"<u>Affiliate</u>" has the meaning set forth in section 101(2) of the Bankruptcy Code.

"<u>Allowed</u>" means, with respect to any Claim or Interest, except as otherwise specified herein, any of the following:  (a) a Claim or Interest that has been scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which (i) the Debtor or any other party in interest has not filed an objection, and (ii) no contrary Proof of Claim has been filed; (b) a Claim or Interest that is not a Disputed Claim or Disputed Interest, except to the extent that any such Disputed Claim or Disputed Interest has been allowed by a Final Order; or (c) a Claim or Interest that is expressly allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtor or the Post-Confirmation Debtor, or (iii) pursuant to the terms of the Plan.

"<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, now in effect and as amended by the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 or hereafter amended (to the extent any such amendments are applicable to the Chapter 11 Case).

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of New York, or any other court having jurisdiction over this Chapter 11 Case.

"Bankruptcy Rules" means, collectively, the (a) Federal Rules of Bankruptcy Procedure and (b) Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended (to the extent any such amendments are applicable to the Chapter 11 Case).

"BPA Down Payment Escrow" means the escrow account held by Seiden, as escrow agent, containing the aggregate amount of fifteen percent (15%) of the total purchase price under the Bulk Purchase Agreement deposited by Fuerta.  As of March 31, 2012, together with accrued interest, the BPA Down Payment Escrow totaled $18,815,260.53.

"Bryan Turley" is, upon information and belief, a principal of Fuerta.

"Building Loan Notes" mean notes issued by the Debtor pursuant to that certain Building Loan Agreement dated as of January 25, 2007 in the principal amount of $49,591,000.

"Bulk Purchase Agreement" means that certain bulk sale agreement entered into on or about April 13, 2006, together with all amendments thereto, between the Debtor and Fuerta pursuant to which Fuerta agreed to purchase all of the Units for a total purchase price of $118,485,440.00.

 "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" as defined in Bankruptcy Rule 9006(a), or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

"Cash" means legal tender of the United States of America including, but not limited to, bank deposits, checks and other similar items.

"Causes of Action" means any:  (a) Claims, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises; (b) all rights of setoff, counterclaim, or recoupment and Claims on contracts or for breaches of duties imposed by law; (c) rights to object to Claims or Interests; (d) Claims pursuant to sections 362, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code; and (e) Claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date including through the Effective Date, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, and whether asserted or assertable directly or derivatively by a Person or Entity who asserted a Claim prior to the Claims Bar Date.

"Chapter 11 Case" means the bankruptcy case of the Debtor commenced under chapter 11 of the Bankruptcy Code, captioned "In re 785 Partners LLC" (Case No. 11-13702) (SMB).

"CKS Finance Ltd." is, upon information and belief, an Irish Entity owned and controlled by Conor Sheahan.

"Claim" means a "claim", as defined in section 101(5) of the Bankruptcy Code, against the Debtor held by a Person or Entity who asserted a Claim prior to the Claims Bar Date.

2

"Claims Bar Date" means the date or dates fixed by the order of the Bankruptcy Court, entered on October 7, 2011 (Docket No. 48), by which Persons or Entities asserting a Claim against the Debtor, and who are required to file a Proof of Claim on account of such Claim, must file a Proof of Claim or be forever barred from asserting a Claim against the Debtor or their property and from voting on the Plan and/or sharing in distributions under the Plan.

"Claims Objection Bar Date" means the bar date for objecting to Proofs of Claim, which date shall be the date which is 120 days following the Effective Date, provided that the Debtor and/or the Post-Confirmation Debtor may seek additional extensions of this date from the Bankruptcy Court.

"Class" means a class of Claims or Interests as listed in Article II of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

"Confirmation" means the Bankruptcy Court's confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

"Confirmation Date" means the day on which the Confirmation Order is entered by the Bankruptcy Court on its docket.

"Confirmation Order" means the order of the Bankruptcy Court approving Confirmation of the Plan.

"Consummation" means the occurrence of the Effective Date.

"Corporate Documents" means, as applicable, the formation documents and by-laws (or any other applicable organizational documents) of the Debtor in effect as of the Petition Date.

"Darina Heavey" is, upon information and belief, a principal or former principal of Fuerta.

"David Scharf" is, upon information and belief, a member of Esplanade.

"Debtor Release" means the release given by the Debtor to the Released Parties as set forth in Section 10.1 of the Plan.

"Debtor" means 785 Partners LLC, a New York limited liability company.

"Debtor In Possession" means the Debtor when acting in the capacity of representative of its Estate in the Chapter 11 Case.

"Disbursing Agent" means the Post-Confirmation Debtor and/or one or more Entities designated by the Debtor or Post-Confirmation Debtor to serve as a disbursing agent under the Plan.

"Disclosure Statement" means the second amended disclosure statement relating to the Plan, as approved by order of the Bankruptcy Court, including all exhibits and schedules thereto and references therein that relate to the Plan.

0279/69797-001 current/25250680v14

"<u>Disputed Claim or Interest</u>" means a Claim or Interest, or any portion thereof, as to which any one of the following applies: (a) that is listed on the Schedules as unliquidated, disputed, contingent or unknown; (b) that is the subject of a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court, the Plan or applicable non-bankruptcy law, which objection or request for estimation has not been withdrawn, resolved or overruled by a Final Order; (c) that is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by a Final Order; or (d) that is otherwise treated as a 'Disputed Claim' pursuant to the Plan.

"<u>Distribution Record Date</u>" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date prior to the Effective Date as may be designated in the Confirmation Order.

"<u>Donal O' Sullivan</u>" is a member of 8 Avenue.

"<u>Effective Date</u>" means the date selected by the Debtor that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article XI hereof and (b) no stay of the Confirmation Order is in effect; <u>provided</u>, <u>however</u>, that such date shall be within fifteen (15) days after entry of the Confirmation Order.

"<u>End Unit Purchaser Representative</u>" means Conor Sheahan, solely in his capacity as a representative and agent for the End Unit Purchasers.

"<u>End Unit Purchasers</u>" means, collectively, the various individuals who purportedly were end purchasers of Units prior to the Petition Date.

"<u>End Unit Purchasers' Claims</u>" means, collectively, the Claims of the End Unit Purchasers to all of the BPA Down Payment Escrow.

"<u>Entity</u>" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

"<u>Esplanade</u>" means Esplanade 8th Avenue LLC, the holder of 0.25% of the Old Membership Interests.

"<u>Estate</u>" means the estate of the Debtor in the Chapter 11 Case created pursuant to section 541 of the Bankruptcy Code.

"<u>EUP/GUC Payment</u>" shall have the meaning referred to in Section 3.10(b) of the Plan.

"<u>Final Order</u>" means, as applicable, an order or judgment entered by the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or motion or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, move

4

for a new trial, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, new trial or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which a new trial, reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules may be but has not then been filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

"FM/GUC Payment" shall have the meaning referred to in Section 3.10(b) of the Plan.

"Jay Eisenstadt" is, upon information and belief, a member of Esplanade.

"John Ryan" is, upon information and belief, a principal or former principal of Fuerta.

"Ken Healy" is, upon information and belief, a principal of Fuerta.

"First Manhattan" means First Manhattan Developments REIT, the current holder of the Notes.

"First Manhattan Claim" means the Claim of First Manhattan arising under the Notes and the Mortgages.

"First Manhattan PG Release" shall have the meaning set forth in Section 11.2(g) of the Plan.

"Fuerta" means Fuerta Property Limited, an Ireland limited liability company.

"Fuerta Claim" means the Claim of Fuerta to all of the BPA Down Payment Escrow.

"General Unsecured Claim" means any Claim against the Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Tax Claim, a Non-Tax Priority Claim, an Other Secured Claim, the First Manhattan Claim, the Time Square Claim, the Fuerta Claim, or the End Unit Purchasers' Claims.

"Holder" means the beneficial holder of any Claim or Interest.

"Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Instrument" means any share of stock, security, promissory note, bond, or any other 'Instrument,' as that term is defined in section 9-102(47) of the Uniform Commercial Code in effect on the Petition Date.

0279/69797-001 current/25250680v14

"<u>Interest</u>" means the interest of any holder of an "equity security" (as defined in section 101(16) of the Bankruptcy Code) represented by any issued and outstanding Old Membership Interests or other Instrument evidencing a present ownership interest in the Debtor, whether or not transferable, or any option, warrant or right, contractual or otherwise, to acquire any such interest and any redemption, conversion, exchange, voting, participation and dividend rights and liquidation preferences relating to any such equity security.

"<u>Judicial Code</u>" means title 28 of the United States Code, 28 U.S.C §§1-4001.

"<u>Kevin O' Sullivan</u>" is a member of 8 Avenue.

"<u>Lien</u>" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"<u>Manager</u>" shall have the meaning set forth in Section 5.2 of the Plan.

"<u>Mortgages</u>" mean the mortgages on the Property and the Units securing the Notes.

"<u>Non-Tax Priority Claim</u>" means a Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"<u>Notes</u>" means, collectively, the Transfer Loan Notes, the Building Loan Notes and the Project Loan Notes, in the total principal amount of $81,212,506 as of the Petition Date.

"<u>Old Membership Interests</u>" mean the membership interests in the Debtor issued and outstanding as of the Petition Date, all unissued and/or authorized membership interests in the Debtor, and any warrants, options, or contractual rights to purchase or acquire such membership interests at any time and all rights arising with respect thereto.

"<u>OMI/GUC Payment</u>" shall have the meaning referred to in Section 3.10(b) of the Plan.

"<u>Other Secured Claim</u>" means any Secured Claim other than the First Manhattan Claim and the Time Square Claim.

"<u>Person</u>" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"<u>Petition Date</u>" means August 3, 2011, the date on which the Debtor filed its Voluntary Petition.

"<u>Plan</u>" means this fifth amended plan of reorganization and any schedules or exhibits hereto, as same may be amended, modified, or supplemented from time to time.

"<u>Post-Confirmation Debtor</u>" means the Debtor as revested with the property of the Estate on and after the Effective Date.

"<u>Priority Tax Claim</u>" means a Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

6

"Project Loan Notes" mean notes issued by the Debtor pursuant to that certain Project Loan Agreement dated as of January 25, 2007 in the principal amount of $20,621,506.

"Professional Fee Claims" means the Claims of (a) Professional Persons and (b) any Person making a Claim for compensation or expense reimbursement under section 503(b) of the Bankruptcy Code, in each case for reasonable compensation or reimbursement of reasonable costs and expenses relating to services performed during the period commencing on the Petition Date and ending on (and including) the Confirmation Date.

"Professional Fee Escrow" shall have the meaning referred to in Section 11.2(d) of the Plan.

"Professional Person" means a Person or Entity who is employed pursuant to a Final Order in accordance with sections 327 or 1103 of the Bankruptcy Code and is to be compensated for services rendered prior to the Confirmation Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code.

"Proof of Claim" means any proof of claim that is filed by a Holder of a Claim.

"Property" means the 43-story, 122-unit residential building with commercial space owned by the Debtor located at 785 Eighth Avenue, New York, New York.

"Receiver" means Gerald Kahn, solely in his capacity as receiver of the Property.

"Rejected Contracts Schedule" has the meaning set forth in Section 9.1 of the Plan.

"Released Party" means each of: (a) the Debtor, (b) Time Square, (c) 8 Avenue, (d) Tower, (e) Esplanade, (f) Fuerta, (g) the End Unit Purchasers, (h) the End Unit Purchaser Representative, (i) Kevin O'Sullivan, (j) Donal O'Sullivan, (k) David Scharf, (l) Jay Eisenstadt, (m) Ulo Barad, (n) Adam Mirzoeff, (o) Bryan Turley, (p) Darina Heavey, (q) John Ryan, (r) Ken Healy, (s) CKS Finance Ltd., and (t) First Manhattan.

"Released Parties' Mutual Releases" shall have the meaning set forth in Section 11.2(e) of the Plan.

"Schedules" means the schedules of assets and liabilities, the list of equity interests, and the statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as the same may be amended or supplemented from time to time.

"Secured" means when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed as such pursuant to the Plan.

"**Secured Tax Claim**" means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

"**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, together with the rules and regulations promulgated thereunder.

"**Security**" means a security as defined in section 2(a)(1) of the Securities Act.

"**Seiden**" means the law firm of Seiden & Schein, P.C.

"**Subclass**" means a subdivision of any Class described herein.

"**Term Sheet**" means that certain Term Sheet for Fourth Amended Plan of Liquidation of 785 Partners LLC, dated as of May 4, 2012.

"**Time Square**" means Time Square Construction & Development, the construction manager for the Property, and the holder of the Time Square Claim.

"**Time Square Claim**" means the Claim of Time Square arising in connection with the construction of the Property.

"**Time Square Lien**" means the Lien against the Property securing the Time Square Claim.

"**Tower**" means Esplanade Tower Corp., a wholly-owned subsidiary of 8 Avenue and the holder of 1.00% of the Old Membership Interests.

"**Transfer Loan Notes**" mean notes issued by the Debtor pursuant to that certain Transfer Loan Agreement dated as of January 25, 2007 in the principal amount of $14,000,000.

"**Ulo Barad**" is, upon information and belief, a member of Esplanade.

"**Unimpaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is not Impaired.

"**Units**" mean, collectively, the 122 residential units located at the Property.

"**Voluntary Petition**" means the voluntary petition filed by the Debtor under chapter 11 of the Bankruptcy Code commencing the Chapter 11 Case.

1.2.    Interpretation, Rules of Construction, Computation of Time, Settlement and Governing Law.

1.2.1    Defined Terms.  Any term used in the Plan that is not defined in the Plan, either in Section 1.1 or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.2.2   Rules of Interpretation.  For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, Instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, but if there exists any inconsistency between a summary of, or reference to, any document in the Plan or Confirmation Order and the document itself, the terms of the document as of the Effective Date shall control; (c) any reference in the Plan to an existing document that is filed or to be filed means such document, as it may have been or may subsequently be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to "section" and "article" are references to a section and article of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) captions and headings to articles and sections are inserted for convenience or reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

1.2.3   Computation of Time.   Unless otherwise specifically stated herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.2.4   Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, Instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtor or the Post-Confirmation Debtor, as applicable, not incorporated or formed in New York shall be governed by the laws of the state of incorporation or formation of the Debtor or Post-Confirmation Debtor, as applicable.

## ARTICLE II

## DESIGNATION OF CLAIMS AND INTERESTS

2.1.   Summary of Designation of Claim and Interests.  The following is a designation of the Classes of Claims and Interests under the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the following Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is within the description of that Class and is classified in another Class to the extent that any remainder of the Claim or Interest qualifies within the description of such other Class or Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest and has not been paid, released or otherwise satisfied before the Effective Date.

0279/69797-001 current/25250680v14

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1: | Non-Tax Priority Claims | None | No Vote Required |
| Class 2: | Other Secured Claims | None | No Vote Required |
| Class 3: | First Manhattan Claim | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 4: | Time Square Claim | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 5: | Fuerta Claim | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 6: | End Unit Purchasers' Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 7: | General Unsecured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| Class 8: | Old Membership Interests | Unimpaired | Deemed to Accept; Not Entitled to Vote |

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

3.1.    Unclassified Claims.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified, are Unimpaired, and are not entitled to vote on the Plan.

3.2.    Administrative Expense Claims.

3.2.1    In General.  Except to the extent that a Holder of an Allowed Administrative Expense Claim has been paid by the Debtor prior to the Effective Date, each Holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim), in full and final satisfaction, release, settlement and discharge of such Administrative Expense Claim, shall be paid in full, in Cash, by Time Square in such amounts as (a) are incurred in the ordinary course of business by the Debtor when and as such Claim becomes due and owing, (b) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing such Administrative Expense Claim or any other date specified in such order, or (c) may be agreed upon between the Holder of such Administrative Expense Claim and the Debtor.  Notwithstanding the foregoing, all Administrative Expense Claims incurred by the Receiver with respect to the operation and maintenance of the Property, including, without limitation, the fees of the Receiver, shall be paid in full in Cash by First Manhattan.

3.2.2    Professional Compensation.

(a)    Final Fee Applications.  All final requests for payment of Professional Fee Claims, including Professional Fee Claims incurred during the period from the Petition Date

through the Confirmation Date, must be filed with the Bankruptcy Court and served on the Post-Confirmation Debtor no later than ten (10) days after the Confirmation Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any applicable orders of the Bankruptcy Court, the Allowed amounts of such Professional Fee Claims shall be determined and paid by Time Square as directed by the Bankruptcy Court.

(b) <u>Post-Confirmation Date Fees and Expenses</u>. Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, Time Square shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Post-Confirmation Debtor. Upon the Confirmation Date, any requirement that Professional Persons comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Post-Confirmation Debtor may employ and pay any Professional Person in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

3.3. <u>Priority Tax Claims</u>. Except to the extent that a Holder of an Allowed Priority Tax Claim for real property taxes has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim for real property taxes, in full and final satisfaction, release, settlement and discharge of such Priority Tax Claim, shall receive on account of such Claim payment in full in Cash by First Manhattan as soon as reasonably practicable after the Effective Date. Except to the extent that a Holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim, in full and final satisfaction, release, settlement and discharge of such Priority Tax Claim, shall receive on account of such Claim, at the option of the Post Confirmation Debtor, either payment in full in Cash by the Post Confirmation Debtor as soon as reasonably practicable after the Effective Date, or in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, regular installment payments in Cash: (i) of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (ii) which total value shall include simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of interest determined under applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code; (iii) over a period ending not later than five (5) years after the Petition Date; and (iv) in a manner not less favorable than the most favored nonpriority unsecured Claim provided for by the Plan. Each Holder of an Allowed Secured Tax Claim shall retain the Lien securing its Allowed Secured Tax Claim as of the Effective Date until full and final payment of such Allowed Secured Tax Claim is made as provided herein, and upon such full and final payment, such Lien shall be deemed to have been satisfied and shall be null and void and unenforceable for all purposes.

3.4. <u>Class 1 (Non-Tax Priority Claims)</u>.

(a) <u>Non-Impairment</u>. Class 1 consists of all Non-Tax Priority Claims. There are no Claims in Class 1.

3.5. <u>Class 2 (Other Secured Claims)</u>.

(a)  Non-Impairment.  Class 2 consists of all Other Secured Claims.  There are no Claims in Class 2.

3.6.  Class 3 (First Manhattan Claim).

(a)  Non-Impairment.  Class 3 consists of the First Manhattan Claim.  Class 3 is Unimpaired as it has consented to the treatment provided in Section 3.6(c) of the Plan.  Therefore, the Holder of the First Manhattan Claim is not required to vote to accept or reject the Plan.

(b)  Allowance.  For purposes of voting to accept or reject the Plan and receiving distributions under the Plan, the First Manhattan Claim has been Allowed in the amount of $96,999,633.54 (inclusive of principal, accrued and unpaid interest, and other costs and fees, but not including professional fees) as of the Petition Date, and continues to accrue post-petition interest at the rate of ten percent (10%) per annum.  As of the Confirmation Date the First Manhattan Claim is expected to be not less than $106.5 million. The parties agree, and for purposes of satisfying the First Manhattan Claim under the Plan, that the value of the Property is deemed to be equal to the amount of the First Manhattan Claim as of the Confirmation Date, less any Cash received by First Manhattan under the Plan.

(c)  Treatment.  On or as soon as practicable after the Effective Date, in full and final satisfaction, release, settlement and discharge of the Allowed First Manhattan Claim, (i) the Debtor shall transfer good and marketable title to the Property to First Manhattan, or its assignee, designee or nominee (in which case the transfer will remain subject to the Notes, Mortgages and Liens held by First Manhattan; all of such obligations being expressly assumed by such assignee, designee or nominee), free and clear of all Liens, Claims, Interests or encumbrances; (ii) First Manhattan shall receive all of the then-existing Cash in the BPA Down Payment Escrow and all other Escrows held by Seiden at all related to the Property or funded by any Person asserting a Claim against the Debtor or the Property; less the sum of $9,500,000 which shall be used to satisfy the Claims held by creditors  in Classes 4, 5 and 6 under this Plan; (iii) the Debtor shall convey and assign to First Manhattan all of the Debtor's right, title and interest in and to (a) that certain note dated February 6, 2009 in the principal amount of $16,922.30 (the "PM Note") made by The Residential Board of Managers of The 306 West 48th Street Condominium (the "Condo Board") to the Debtor, (b) the mortgage dated February 6, 2009 by the Condo Board to the Debtor (the "PM Mortgage") which secures such note and encumbers the condominium unit known as 4A at the Property (which is intended to be used as a superintendent's apartment), (c) all amounts due and owing on the PM Note and the PM Mortgage, (d) any and all other Claims which the Debtor may have against the Condo Board; (iv) all other deliverables under the Term Sheet not otherwise referred to in this Plan; and (v) effective upon the Confirmation Date, all of the principals of the Debtor, including, without limitation, Kevin O'Sullivan and Donal O'Sullivan, shall be deemed to have resigned from any positions they may hold as officers, board members or otherwise with respect to the Condo Board.

3.7.  Class 4 (Time Square Claim).

(a)     Impairment.  Class 4 consists of the Time Square Claim.  Class 4 is Unimpaired as it has consented to the treatment provided in Section 3.7(c) of the Plan. Therefore, the Holder of the Time Square Claim is not required to vote to accept or reject the Plan.

(b)     Treatment.  (i) Time Square shall not receive any distribution under the Plan and (ii) on or as soon as practicable after the Effective Date the Time Square Lien shall be deemed released and extinguished.

### 3.8.     Class 5 (Fuerta Claim).

(a)     Impairment.  Class 5 consists of the Fuerta Claim.  Class 5 is Unimpaired as it has consented to the treatment provided in Section 3.8(b) of the Plan. Therefore, the Holder of the Fuerta Claim is not required to vote to accept or reject the Plan..

(b)     Treatment.  On or as soon as practicable after the Effective Date, the Holder of the Fuerta Claim, in full and final satisfaction, release, settlement and discharge of such Claim, shall receive a Cash payment of $280,000.00 from the BPA Down Payment Escrow. The Parties agree that the Holder of the Fuerta Claim is 785 Depositors, LLC, a Delaware limited liability company, or its assignee or designee.

### 3.9.     Class 6 (End Unit Purchasers' Claims).

(a)     Impairment.  Class 6 consists of the End Unit Purchasers' Claims.  Class 6 is Unimpaired as it has consented to the treatment provided in Section 3.9(b) of the Plan.[1] Therefore, the Holder of the End Unit Purschasers' Claim is not required to vote to accept or reject the Plan..

(b)     Treatment.  On or as soon as practicable after the Effective Date, in full and final satisfaction, release, settlement and discharge of the End Unit Purchasers' Claims, the Holders of the End Unit Purchasers' Claims or any entity designated by the End Unit Purchaser Representative shall receive a payment, in Cash, from the BPA Down Payment Escrow, in the amount of $6,620,000 less the EUP/GUC Payment referred to in Section 3.10(b).  Such cash payment shall be made to any person or entity designated in writing by Mr. Conor Sheahan, the authorized representative of the End Unit Purchasers (including, without limitation, any entity or trust formed for the purpose of distributing the Cash payment to which the End Unit Purchasers are entitled).

### 3.10.    Class 7 (General Unsecured Claims).

(a)     Non-Impairment.  Class 7 consists of all General Unsecured Claims. Class 7 is Unimpaired, and the Holders of Claims in Class 7 are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.  It is estimated that the General Unsecured Claims shall not exceed $185,000 in the aggregate.

---

[1]     As set forth in Section 6.1 of the Plan, the End Unit Purchaser Representative has been appointed as the sole representative and agent for the End Unit Purchasers for, among other things, voting to accept or reject the Plan in respect of the End Unit Purchasers' Claims.

(b)     Treatment.  On or as soon as practicable after the Effective Date, except to the extent a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim, in full and final satisfaction, release, settlement and discharge of such Claim, shall be paid in full with interest at the Federal Judgment Rate in effect on the Effective Date, in Cash, fourteen percent (14%) by the holders of the Old Membership Interests (the "OMI/GUC Payment"), thirty-six percent (36%) by the End Unit Purchasers (the "EUP/GUC Payment") and fifty percent (50%) by First Manhattan, provided, however, First Manhattan's obligation hereunder shall not exceed $90,000.00 (the "FM/GUC Payment").

3.11.     Class 8 (Old Membership Interests).

(a)     Non-Impairment.  Class 8 consists of all Old Membership Interests.  Class 8 is Unimpaired as it has consented to the treatment provided in Section 3.11(b) of the Plan. Therefore, the Holders of the Old Membership Interests Claim are not required to vote to accept or reject the Plan.

(b)     Treatment.  On or as soon as practicable after the Effective Date, in full and final satisfaction, release, settlement and discharge of the Interests of the Old Membership Interests, (i) all Old Membership Interests shall be retained, and (ii) the Holders of Old Membership Interests shall receive a payment, in Cash, from the BPA Down Payment Escrow, in the amount of $2,600,000 less the sum of (x) the OMI/GUC Payment referred to in Section 3.10(b) of the Plan and the Professional Fee Escrow referred to in Section 11.2(d) of the Plan.

# ARTICLE IV

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1.     Plan Funding.  The funds utilized to make Cash payments under the Plan will be generated from, among other things, the disposition of the BPA Down Payment Escrow and other escrows, as set forth in Sections 3.6, 3.7, 3.8, 3.9 and 11.2(d) of the Plan.  Moreover, as and to the extent set forth in (i) Section 3.2 of the Plan, Time Square and First Manhattan as the case may be, shall pay certain designated Administrative Expense Claims (including Professional Fee Claims) in full in Cash, and (ii) Section 3.10 of the Plan, Allowed General Unsecured Claims shall be paid in full in Cash by the sum of the OMI/GUC Payment, the EUP/GUC Payment and the FM/GUC Payment.

4.2.     Relinquishment of Time Square Lien.  As set forth in Section 3.7(b) of the Plan, on or as soon as practicable after the Effective Date, the Time Square Lien shall be released and extinguished.

4.3.     Cancellation and Surrender of Existing Securities and Agreements.

(a)     Except as may otherwise be provided in the Plan, on the date distributions are made, the promissory notes, bonds and other Instruments evidencing any Claim shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtor (and, as applicable, any non-Debtor subsidiaries

14

and affiliates of the Debtor) under the agreements, indentures and certificates of designations governing such Claims shall be discharged and released.

(b)     Except as otherwise provided herein or agreed by the Post-Confirmation Debtor, each holder of a promissory note, bond or other Instrument evidencing a Claim shall surrender such promissory note, bond or Instrument to the Post-Confirmation Debtor (or the Disbursing Agent). No distribution of property hereunder shall be made to or on behalf of any such holders unless and until such promissory note, bond or Instrument is received by the Post-Confirmation Debtor (or the Disbursing Agent), or the unavailability of such promissory note, bond or Instrument is established to the reasonable satisfaction of the Post-Confirmation Debtor (or the Disbursing Agent), or such requirement is waived by the Post-Confirmation Debtor. The Post-Confirmation Debtor may require any holder that is unable to surrender or cause to be surrendered any such promissory notes, bonds or Instruments to deliver an affidavit of loss and indemnity reasonably satisfactory to the Post-Confirmation Debtor. Any holder that fails within the later of six months after the Effective Date and the date of allowance of its Claim or Interest (i) to surrender or cause to be surrendered such promissory note, bond or Instrument and (ii) if requested, to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Post-Confirmation Debtor (or the Disbursing Agent), shall be deemed to have forfeited all rights, Claims and Causes of Action against the Debtor and the Post-Confirmation Debtor and shall not participate in any distribution hereunder.

4.4.     <u>Revesting of Assets and Operation of Business</u>. Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, any property remaining in the Estate after the distributions required by the Plan shall revest in the Post-Confirmation Debtor free and clear of all Claims, Liens, encumbrances and other Interests of the Holders of Claims or Interests.

4.5.     <u>Retention of Causes of Action</u>. Except as otherwise provided in the Plan, the Confirmation Order, or in any settlement agreement approved during the Chapter 11 Case: (1) any and all rights, Claims, Causes of Action, defenses, and counterclaims of or accruing to the Debtor or its Estate shall remain assets of and vest in the Post-Confirmation Debtor, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, Causes of Action, defenses, and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) neither the Debtor nor the Post-Confirmation Debtor waives, relinquishes, or abandons (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Estate: (a) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to such right, Claim, Cause of Action, defense, or counterclaim filed a Proof of Claim in the Chapter 11 Case, filed a notice of appearance or any other pleading or notice in the Chapter 11 Case, voted for or against the Plan, or received or retained any consideration under the Plan. Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a

15

right, Claim, Cause of Action, defense, or counterclaim, or potential right, Claim, Cause of Action, defense, or counterclaim, in the Plan, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Post-Confirmation Debtor's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, or counterclaims that the Debtor or the Post-Confirmation Debtor has, or may have, as of the Confirmation Date. The Post-Confirmation Debtor may commence, prosecute, defend against, settle, and realize upon any rights, Claims, Causes of Action, defenses, and counterclaims in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the Post-Confirmation Debtor.

4.6.    <u>Satisfaction of Claims</u>.  Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims shall be in full and final satisfaction, release, settlement and discharge of such Allowed Claims.

4.7.    <u>Continuation of Bankruptcy Injunction or Stays</u>.  All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

4.8.    <u>Administration Pending Effective Date</u>.  Prior to the Effective Date, the Debtor shall continue to operate its business as a debtor-in-possession, subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

4.9.    <u>Corporate Action</u>. Each of the matters provided for by the Plan to be taken by or required of the Post-Confirmation Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further corporate or shareholder action.

## ARTICLE V

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF THE POST-CONFIRMATION DEBTOR

5.1.    <u>Corporate Existence</u>.  Except as otherwise provided in the Plan, the Debtor shall continue to exist after the Effective Date as a limited liability company with all the powers of a limited liability company pursuant to the applicable law in the jurisdiction in which the Debtor is formed and pursuant to its formation documents in effect prior to the Effective Date.

5.2.    <u>Management of Post-Confirmation Debtor</u>.  On the Effective Date, 8 Avenue shall remain as the managing member of the Post-Confirmation Debtor (the "<u>Manager</u>").  The Manager shall have the power, authority and obligation to manage the business of the Post-Confirmation Debtor, to make all decisions regarding the Post-Confirmation Debtor, and to perform all other acts customary or incident to the management of the Post-Confirmation Debtor.

0279/69797-001 current/25250680v14

5.3.    Board Of Managers of Post-Confirmation Debtor.    In accordance with section 1129(a)(5) of the Bankruptcy Code, Kevin O'Sullivan and Donal O'Sullivan shall continue to serve on the board of managers of the Post-Confirmation Debtor.

5.4.    Officers of Post-Confirmation Debtor.    In accordance with section 1129(a)(5) of the Bankruptcy Code, Kevin O'Sullivan and Donal O'Sullivan shall continue to serve as officers of the Post-Confirmation Debtor.

## ARTICLE VI

## VOTING

6.1.    Voting Generally.    Each holder of an Allowed Claim in an Impaired Class which is entitled to vote under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other controlling order or orders of the Bankruptcy Court; provided, however, that the End Unit Purchaser Representative shall be the End Unit Purchasers' sole representative and agent in connection with, among other things, receiving any and all solicitation materials in connection with the Plan and voting, executing and returning any ballot for the acceptance or rejection of the Plan in respect of the End Unit Purchasers' Claims.

6.2.    Nonconsensual Confirmation.    If any Impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in section 1126 of the Bankruptcy Code, or if any Impaired Class is deemed to have rejected the Plan, the Debtor reserves the right (a) to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code and (b) to amend the Plan to the extent necessary to obtain entry of the Confirmation Order.

## ARTICLE VII

## DISTRIBUTIONS UNDER THE PLAN

7.1.    Distributions to Holders of Allowed Claims Only.    Until a Disputed Claim becomes an Allowed Claim, distributions of Cash or property otherwise available to the Holder of such Claim shall not be made.  Prior to the Effective Date, Holders of Claims shall be required to provide the Disbursing Agent an Internal Revenue Service Form W-9 (or, if applicable, an appropriate Internal Revenue Service Form W-8).

7.2.    Distribution Record Date.    The Debtor shall have no obligation to recognize, but may, in its sole and absolute discretion, recognize any transfer of any Claims occurring on or after the Distribution Record Date.  The Debtor or the Post-Confirmation Debtor, as applicable, will be entitled to recognize only those record holders of Claims as of the close of business on the Distribution Record Date.  Subject to the foregoing, the Distribution Record Date shall be the record date for purposes of making distributions under the Plan.

7.3.    Disbursing Agent.  The Post-Confirmation Debtor, as Disbursing Agent, or such other Entity designated by the Post-Confirmation Debtor as a Disbursing Agent, shall make all distributions under the Plan when required by the Plan.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

7.4.    Rights and Powers of Disbursing Agent.  The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, Instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated by the Plan, and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

7.5.    Delivery of Distributions.

7.5.1    In General.  Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Debtor's books and records or on the Schedules filed with the Bankruptcy Court unless the Debtor or their Disbursing Agent have been notified in writing of a change of address including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on such books and records or Schedules for such Holder.

7.5.2    Timing of Distributions.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and if so completed shall be deemed to have been completed as of the required date.

7.5.3    Distributions of Unclaimed Property.  In the event that any distribution to any Holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such Holder, but no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest or accruals of any kind.  Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code on the six month anniversary of the Effective Date.  After that date, all unclaimed property or interest in property shall revert to and be split equally by the Post-Confirmation Debtor and First Manhattan and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

7.6.    Time Bar to Cash Payments.  Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof.  Holders of Allowed Claims shall make all requests for reissuance of checks to the Post-Confirmation Debtor.  Any Claim in respect of a voided check must be made on or before the six month anniversary of the date of issuance.  After such date, all Claims and respective voided checks shall be discharged and forever barred and the Post-Confirmation Debtor and First Manhattan shall retain all monies related thereto to be split equally.

0279/69797-001 current/25250680v14

7.7.    Setoffs.  The Debtor or the Post-Confirmation Debtor may, but shall not be required to, set off or recoup against any Allowed Class 7 Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Allowed Class 7 Claim, any claims, rights or Causes of Action of any nature whatsoever that the Debtor or Post-Confirmation Debtor may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Post-Confirmation Debtor of any such claims, rights or Causes of Action.

## ARTICLE VIII

## PROCEDURES FOR DISPUTED CLAIMS

8.1.    Resolution of Disputed Claims.  Except as set forth in any order of the Bankruptcy Court, any Holder of a Claim against the Debtor shall file a Proof of Claim with the Bankruptcy Court or with the agent designated by the Debtor for this purpose on or before the Claims Bar Date.  The Debtor and First Manhattan prior to the Effective Date, and thereafter the Post-Confirmation Debtor and First Manhattan, shall have the exclusive authority to file objections to Proofs of Claim on or before the Claims Objection Bar Date, and to settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether classified or otherwise.  From and after the Effective Date, First Manhattan and the Post-Confirmation Debtor with First Manhattan's  consent,  may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

8.2.    Estimation of Claims.  The Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.  Claims may be estimated and thereafter resolved by any permitted mechanism.

8.3.    No Partial Distributions Pending Allowance.  Notwithstanding any other provision in the Plan, except as otherwise agreed by the Debtor or the Post-Confirmation Debtor, no partial payments or distributions shall be made with respect to a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order.

8.4.    Distributions After Allowance.  To the extent a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder thereof the distributions, if any, to which such Holder is then entitled under the Plan.  Any such distributions shall be made

0279/69797-001 current/25250680v14

in accordance with and at the time mandated by the Plan.  No interest shall be paid on any Disputed Claim that later becomes an Allowed Claim.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1.    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  Within thirty days of the Effective Date, First Manhattan shall file a schedule with the Bankruptcy Court on notice to the counter parties to such executory contracts of the contracts that the Debtor is assuming and assigning to it as of the Effective Date; in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed and assigned pursuant to the Plan shall be fully enforceable by First Manhattan in accordance with its terms, except as modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.  All executory contracts and unexpired leases to which the Debtor is a party and which are not assumed and assigned to First Manhattan shall be deemed to be rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Confirmation Date.

9.2.    <u>Cure of Defaults of Assumed Executory Contracts and Unexpired Leases</u>.

(a)    Except as otherwise specifically provided in the Plan, any monetary defaults under each executory contract and unexpired lease to be assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash by First Manhattan, subject to the limitation described below, or on such other terms as the parties to such executory contracts or unexpired leases may otherwise agree.  In the event of a dispute regarding:  (1) the amount of any payments to cure such a default, (2) the ability of First Manhattan to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption; <u>provided</u>, <u>however</u>, that based on the Bankruptcy Court's resolution of any such dispute, the Debtor or Post-Confirmation Debtor shall have the right, within 30 days after the entry of such Final Order and subject to approval of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, to reject the applicable executory contract or unexpired lease.

(b)    Assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption.  Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

20

9.3. <u>Pass-Through</u>. Any rights or arrangements necessary or useful to the operation of the Debtor's business but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses, rights under guarantees or warranties, and other executory contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment, be passed through the bankruptcy proceedings for First Manhattan's benefit, unaltered and unaffected by the bankruptcy filings or the Chapter 11 Case.

9.4. <u>Survival of Indemnification and Corporation Contribution</u>. The obligations of the Debtor, if any, to indemnify and/or provide contribution to its current and former directors, officers, employees, managing agents, members and attorneys, and such parties' respective affiliates, pursuant to the Corporate Documents and/or any employment contracts, applicable statutes or other contractual obligations, in respect of all past, present and future actions, suits and proceedings against any of such parties, based on any act or omission related to the service with, for or on behalf of the Debtor, will be deemed and treated as executory contracts that are assumed by the Debtor or Post-Confirmation Debtor pursuant to the Plan and sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification and contribution obligations will not be discharged, but will instead survive and be unaffected by entry of the Confirmation Order.

9.5. <u>Insurance Policies</u>. Each of the Debtor's insurance policies and any agreements, documents, or Instruments relating thereto, are treated as executory contracts under the Plan. On the Effective Date, the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and Instruments relating to coverage of all insured Claims.

9.6. <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>.

(a) Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

(b) Modifications, amendments, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

9.7. <u>Bar Date for Filing Claims for Rejection Damages</u>. If the rejection of an executory contract or unexpired lease pursuant to the Plan gives rise to a Claim, a Proof of Claim must be served upon the Debtor, First Manhattan and their respective counsel within 30 days after the later of:

(a) notice of entry of the Confirmation Order; or

(b)     such other notice that the executory contract or unexpired lease has been rejected.

Any such Claim not served within such time period will be forever barred.  Each such Claim will constitute a General Unsecured Claim, to the extent such Claim is Allowed by the Bankruptcy Court.

9.8.     <u>Reservation of Rights</u>.     Nothing contained in the Plan shall constitute an admission by the Debtor that any executory contract or unexpired lease is in fact an executory contract or unexpired lease or that the Post-Confirmation Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Post-Confirmation Debtor, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

9.9.     <u>Nonoccurrence of Effective Date</u>.  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

9.10.     <u>Contracts and Leases Entered Into After the Petition Date</u>.  Provided that such contracts and leases are not related to the Property, contracts and leases entered into after the Petition Date by the Debtor, will be performed by the Debtor or Post-Confirmation Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed executory contracts and unexpired leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE X

## RELEASES AND INJUNCTIONS

10.1.     **<u>Releases by the Debtor</u>.  Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Confirmation Date, the Released Parties are deemed released and discharged by the Debtor, the Post-Confirmation Debtor, and the Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, including any derivative Claims asserted or that could possibly have been asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the Estate would have been legally entitled to assert in its own right or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation,**

formulation, or preparation of the Plan, the related Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Confirmation Date of the Plan.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Confirmation or Effective Date obligations of any party under the Plan, the Term Sheet or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by this Section 10.1; (3) in the best interests of the Debtor and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to the Debtor asserting any claim or Cause of Action released pursuant to the Debtor Release.

10.2.  **Releases by Released Parties**.  As of the Confirmation Date, each of the Released Parties hereby conclusively, absolutely, unconditionally, irrevocably, and forever releases, waives and discharges all known and unknown Causes of Action of any nature that such Released Party has asserted, may have asserted, could have asserted, or could in the future assert, directly or indirectly, against the Debtor and the Post-Confirmation Debtor based on any act or omission relating to the Debtor or its business operations (including, without limitation, the organization or capitalization of the Debtor or extensions of credit and other financial services and accommodations made or not made to the Debtor), the Chapter 11 Case, the Property, and the Bulk Purchase Agreement on or prior to the Effective Date; provided, however, that the foregoing releases shall not apply to Causes of Action that arise post-Effective Date from obligations or rights created under or in connection with the Plan, the Term Sheet or any agreement provided for or contemplated in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release contained in this Section 10.2, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is:  (1) in exchange for the good and valuable consideration provided by the Debtor; (2) a good faith settlement and compromise of the Claims released by this Section 10.2; (3) in the best interests of the Debtor and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity granting such release from asserting any claim or Cause of Action released pursuant to such release.

10.3.  **Injunction**.  Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Section 10.1 hereof  are permanently enjoined, from and after the Confirmation Date, from taking any of the

following actions against, as applicable, the Debtor, the Post-Confirmation Debtor or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of subrogation or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

10.3.1 **Violation of Injunctions**. Any Person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

10.3.2 **Consent to Injunctions**. By accepting distributions or other benefits pursuant to the Plan, each Holder of an Allowed Claim or Interest receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in the Plan.

## ARTICLE XI

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

11.1. <u>Conditions Precedent to Confirmation</u>. It shall be a condition precedent to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 11.3 hereof:

(a) the Bankruptcy Court shall have entered an order approving the adequacy of the Disclosure Statement; and

(b) the Bankruptcy Court shall have entered the Confirmation Order in a form satisfactory to the Debtor and First Manhattan.

11.2. <u>Conditions Precedent to the Effective Date</u>. It shall be a condition precedent to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 11.3 hereof:

(a) all conditions to Confirmation in Section 11.1 of the Plan shall have been either satisfied or waived pursuant to Section 11.3 of the Plan;

(b) the Confirmation Order shall have become a Final Order;

(c)     all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered, as the case may be, to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

(d)     the Holders of Old Membership Interests shall have deposited into an escrow to be held by their counsel, John H. Snyder PLLC, $1,980,000 from the distribution the Holders of Old Membership Interests are to receive under Section 3.11(b) of the Plan to be used to cover Administrative Expense Claims (including Professional Fee Claims) pursuant to Section 3.2 of the Plan (the "Professional Fee Escrow");

(e)     the Released Parties shall have agreed to release any and all Claims and Causes of Action against each other, in forms satisfactory to each of the Released Parties (the "Released Parties' Mutual Releases").

(f)     First Manhattan shall have withdrawn with prejudice all adversary proceedings and motions filed in or incident to the Chapter 11 Case against the Debtor, Time Square, Fuerta and/or the End Unit Purchasers;

(g)     First Manhattan shall have agreed to release any and all Claims and Causes of Action against Kevin O'Sullivan and Donal O'Sullivan including, without limitation, any personal guarantees made by Kevin O'Sullivan and Donal O'Sullivan in connection with or related to the Debtor's liabilities under or for the First Manhattan Claim, in a form satisfactory to First Manhattan, Kevin O'Sullivan and Donal O'Sullivan (the "First Manhattan PG Release"); and

(h)     First Manhattan shall have executed and delivered the First Manhattan PG Release; and

(i)     the Released Parties shall have executed and delivered the Released Parties' Mutual Releases.

11.3.    Waiver of Conditions.    The Plan memorializes the agreements of numerous constituencies.  Consequently, the conditions to Confirmation and the Effective Date set forth in this Article XI may not be waived by the Debtor without notice, leave, or order of the Bankruptcy Court..

11.4.    Effect of Failure of Conditions.    If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by the Debtor, any Holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders of Claims or Interests, or any other Entity in any respect.

11.5.    Substantial Consummation.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

# ARTICLE XII

## RETENTION OF JURISDICTION

12.1.   <u>Retention of Jurisdiction</u>.   Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction (except with respect to the purposes described under clauses (a) and (n) below, with respect to which jurisdiction shall not be exclusive) over all matters arising out of or related to the Chapter 11 Case and the Plan, to the fullest extent permitted by law, including jurisdiction to:

> (a)   determine any and all objections to the allowance of Claims or Interests;

> (b)   determine any and all motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

> (c)   determine any and all motions to subordinate Claims or Interests at any time and on any basis permitted by applicable law;

> (d)   hear and determine all Administrative Expense Claims;

> (e)   hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation of any Claims arising therefrom;

> (f)   hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

> (g)   enter such orders as may be necessary or appropriate in aid of the Consummation hereof and to execute, implement, or consummate the provisions hereof and all contracts, Instruments, releases, and other agreements or documents created in connection with the Plan or the Confirmation Order;

> (h)   hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement hereof and all contracts, Instruments, and other agreements executed in connection with the Plan;

> (i)   hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency herein or any order of the Bankruptcy Court;

> (j)   issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with or compel action for the implementation, Consummation, or enforcement hereof or the Confirmation Order;

26

(k)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(l)     hear and determine any matters arising in connection with or relating to the Plan, the Confirmation Order or any contract, Instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order;

(m)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

(n)     recover all assets of the Debtor and property of the Estate, wherever located;

(o)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(p)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(q)     hear and determine all other motions, applications and contested or litigated matters which were pending but not resolved as of the Effective Date including, without limitation, any motions, applications and contested or litigated matters to sell or otherwise dispose of assets and/or grant related relief; and

(r)     enter a final decree closing the Chapter 11 Case.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1.   <u>Immediate Binding Effect</u>.  Subject to Section 11.2 hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Post-Confirmation Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all parties to executory contracts and unexpired leases with the Debtor.

13.2.   <u>Effectuating Documents; Further Transactions</u>.   The Debtor or the Post-Confirmation Debtor (as the case may be) is authorized to execute, deliver, file, or record such contracts, Instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The secretary or any assistant secretary (or other authorized Person) of the Debtor or the Post-Confirmation Debtor is authorized to certify or attest to any of the foregoing actions.

0279/69797-001 current/25250680v14

13.3.    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Post-Confirmation Debtor (or the Disbursing Agent on behalf of the Post-Confirmation Debtor) for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

13.4.    <u>Dissolution of Any Statutory Committee</u>.  On the Effective Date, any statutory committee appointed in the Chapter 11 Case shall dissolve, and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Case.  The Post-Confirmation Debtor shall no longer be responsible for paying any fees or expenses incurred by any statutory committees after the Effective Date.

13.5.    <u>Entire Agreement</u>.  On the Effective Date, except as otherwise indicated, the Plan shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.6.    <u>Exemption From Certain Transfer Taxes</u>.  Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtor to the Post-Confirmation Debtor or any other Person or Entity pursuant to or in connection with the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing Instruments or other documents without the payment of any such tax or governmental assessment.

13.7.    <u>Amendment, Modification and Severability of Plan Provisions</u>.  If, prior to Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

(a)    The Plan may be amended or modified before the Effective Date by the Debtor to the extent provided by section 1127 of the Bankruptcy Code.

(b)    The Debtor reserves the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan, in its current form, is not confirmable pursuant to section 1129 of the Bankruptcy Code.  To the extent such a modification or amendment is permissible under section 1127 of the Bankruptcy Code, without the need to

28

resolicit acceptances, the Debtor reserves the right to sever any provisions of the Plan that the Bankruptcy Court finds objectionable.

(c)     The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, or if Confirmation does not occur, then the Plan shall be null and void, and nothing contained in the Plan shall:  (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor; or (2) prejudice in any manner the rights of the Debtor in any further proceedings.

13.8.     <u>Withholding and Reporting Requirements</u>.  In connection with the Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, subject to the sentence next following.  Notwithstanding the foregoing, the Cash payment payable to the End Unit Purchasers (or to their designee) is a return of a portion of the purchase deposits made by the End Unit Purchasers and shall not be subject to federal, New York State or local withholding taxes.

13.9.     <u>Closing of Chapter 11 Case</u>.  The Post-Confirmation Debtor shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

13.10.     <u>Conflicts</u>.  To the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

13.11.     <u>Notices to Debtor and First Manhattan</u>.  Any notice, request, or demand required or permitted to be made or provided to or upon the Debtor, the Post-Confirmation Debtor or First Manhattan hereunder shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

785 PARTNERS LLC
c/o Kevin O'Sullivan
355 Lexington Avenue
17th Floor
New York, New York  10017
Telephone:  (212) 687-1400
Facsimile:  (212) 687-1415

with a copy to:

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Attn: Sheldon I. Hirshon
    Lawrence S. Elbaum
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

If to First Manhattan:

SILVERMANACAMPORA LLP
Attn: Gerard R. Luckman, Esq.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone : 516.479.6300
Facsimile: 516.479.6301

13.12. <u>Binding Effect</u>.  The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims against and Interests in the Debtor, their respective successors and assigns, including the Post-Confirmation Debtor, and all other parties in interest in the Chapter 11 Case.

13.13. <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein including, without limitation, liability on any Claim.

13.14. <u>Allocation of Distributions Between Principal and Interest</u>.  To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first, and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

13.15. <u>Headings</u>.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

[SIGNATURE PAGE FOLLOWS]

0279/69797-001 current/25250680v14

Dated:  May 9, 2012

785 PARTNERS LLC,
*Debtor and Debtor in Possession*


By: /s/ Kevin O'Sullivan
         Kevin O'Sullivan
         Authorized Representative


PROSKAUER ROSE LLP
Sheldon I. Hirshon
Lawrence S. Elbaum
Craig A. Damast
Eleven Times Square
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

Counsel for the Debtor and Debtor in Possession